| 45 | 539 |
|----|-----|
| 76 | 145 |
| 45 | 539 |
| 78 | 41 |
| 78 | 50 |

## JOSEPH LANDA v. JACOB OBERT.

1. MALICIOUS PROSECUTION—PRACTICE—PROBABLE CAUSE.—What facts and circumstances amount to probable cause is a pure question of law; whether they exist in any particular case is a question of fact for the jury.

2. PROBABLE CAUSE.—The most approved definition of probable cause, and which commends itself as 'the true one, is given by Mr. Justice Washington in 3 Wash. C. C., in Munro v. Dupont et al.: "A reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged."

3. ATTORNEY'S FEES AS PART OF DAMAGES.—Where a person is entitled to vindictive damages, the jury, in making up their verdict, may consider the plaintiff's expense in prosecuting the suit; and if their verdict is not so grossly excessive as to warrant the court setting it aside, no inquiry can be made as to the inducement operating on their minds in reaching their conclusion.

4. SAME.—We think the plaintiff entitled to recover his attorney fees only where they are a part of the damages resulting as the natural and proximate consequence of the act complained of.

5. DURESS.—Threats of a criminal prosecution for embezzlements and of a civil action for money claimed to have been wrongfully and fraudulently withheld, not importing a purpose to make any unusual, harsh, oppressive, or illegal use of the process threatened, do

not constitute duress such as will avoid a contract entered into under such influence.

6. Evidence.—An affidavit made for change of venue is not admissable in evidence in a suit for slander and false imprisonment.

7. Slander—Evidence—General reputation.—In an action for slander the publication cannot be proved by general reputation; and evidence of reputation of such fact should be excluded.

Appeal from Comal. Tried below before the Hon. J. P. Richardson.

Landa owned and operated a grist and flouring mill at New Braunfals for a number of years; Obert was his miller, and after several years was suspected by Landa of appropriating money received from the mill belonging to his employer. A detective was employed, and Landa became satisfied of Obert's guilt; lawyers were employed to bring suit, but they having a personal interview with Obert, a settlement was made, September 12, 1870, between them, whereby Obert paid Landa $1,185 in gold, and surrendered two notes he held, on Landa, amounting to $1,815; in the aggregate $3,000. It was also further agreed and settled that an account of Obert against Landa for $450, for labor, should be offset by articles—meal, brand, &c.—alleged to have been taken by Obert from the mill.

It seems to have been agreed that no publicity should be made of the affair, but the grand jury of Comal county indicted Obert for embezzling, and in the prosecution Landa was examined as a witness. On trial, Obert was acquitted. On January 9, 1871, Obert brought suit in the District Court of Comal county against Landa, to recover the money he had paid Landa, for the amount of the two notes he had surrendered, for account for services rendered, &c., and for slander, in that Landa had charged him with embezzlement and for malicious prosecution, laying damages at twenty thousand dollars; and also alleging that the money he had paid, the notes surrendered, and the settlement on 12th September, 1870, was procured by duress.

Landa, January 20, 1872, pleaded a general demurrer and

general denial. On the same day a motion was made by him for change of venue, which was granted, and the case was transferred to Guadalupe county.

August 18, 1871, Landa, amending his answer, pleaded that the settlement of 12th September, 1870, was full and complete between the parties; that there was no force used, no threats or undue influence brought to bear to induce the settlement; that the same was freely and voluntarily made after Obert had consulted his friends, and that if the settlement should be set aside, then that he (Landa) was entitled to recover $25,000, the value of the money and proceeds of the mill which had been appropriated during the years of his employment.

The jury found a verdict as follows:

"We, the jury, find for the plaintiff for the amount of the two notes, $1,185 in gold, at eight per cent. interest, and for an account of $450, for services rendered, at eight per cent., and $1,000 for attorney's fees in this suit."

Upon the verdict judgment was rendered, from which Landa appealed.

*John Ireland* and *W. M. Rust*, for appellant, cited Hill. on Torts, ch. 7, §§ 2, 3; Onslow *v.* Horne, 3 Wils., 177; Towns. on Lib. and Slan., p. 38; Wheeler *v.* Nesbitt, 24 How., 544; 2 Greenl. Ev., 153, 553; Ellis *v.* Thelman, 3 Cal., 3; McNeese *v.* Herring, 8 Tex., 151; Griffin *v.* Chubb, 7 Tex., 603; Hitson *v.* Forest, 12 Tex., 320; Chandler *v.* McPherson, 11 Ala., 916; Hall *v.* Suydam, 6 Barb., 83; Stone *v.* Crocker, 24 Pick., 81; Stone *v.* Swift, 4 Pick., 389; 1 Cooley's Blacks., 133; Brown *v.* Pierce, 7 Wall., 215: Phelps *v.* Zuschlag, 34 Tex., 371; Spaulding *v.* Crawford, 27 Tex., 155; Story on Cont., § 394; Chit. on Con., 193; Crowell *v.* Gleason, 1 Fairf., 325; Watkins *v.* Baird, 6 Mass., 506; Foshay *v.* Ferguson, 5 Hill., 154; Baker *v.* Morton, 12 Wall., 158; Vanderhoven *v.* Nette, 32 Tex., 184; Inhabitants of Worcester *v.* Eaton, 11 Mass., 379; Alexander *v.* Pierce, 10 N. H., 494; Eddy *v.* Herrin,

17 Maine, 338; Wilcox v. Howland, 23 Pick., 167; Worcester v. Eaton, 13 Mass., 371; Knapp v. Hyde, 60 Barb., (N. Y.,) 80; Barret v. French, 1 Conn., 356; Bosley v. Shannon, 26 Ark., 280; 1 Pars. on Con., 393; Fulmer v. Harmon, 3 Strobh., 576; Waller v. Cralle, 8 B. Monr., 11; Bingham v. Sessions, 6 Sm. & Marsh., 13; Chase v. Daynal, 7 Greenl., 134; Kerr on Fraud, 189, 190; Juzon v. Toulmin, 9 Ala., 662; Green v. Thompson, 2 Ired., 365; Dunn v. Chambers, 4 Barb., 376; 4 Kent, 452; Broom's Leg. Max., 201: Knibbs v. Hall, 1 Esp., 84; Brown v. McKinally, 1 Esp., 279; Cartwright v. Rowley, 2 Esp., 723; Morgan v. Palmer, 2 Barn. & Cress., 729; Tyler v. Smith, 18 B. Monr., 793; Elliott v. Swartwout, 10 Pet., 137; Marietta v. Slocumb, 6 Ohio N. S., 471; Reid v. Dunklin, 5 Ala., 205; Claiborne v. Tanner, 18 Tex., 78; 1 Chit. Cr. Law., 644; Bacon's Ab'r, tit. "VERDICT;" Jackson v. State, 21 Tex., 675; Langley v. Warner, 3 Comst., 327; Jenks v. Hallet, 1 Cai. R., 60; Dallam, 494; McConkey v. Henderson, 24 Tex., 212; Burton v. Anderson, 1 Tex. 98; Fowler v. Willis, 4 Tex., 46.

*Waelder & Upson* and *W. E. Goodrich*, cited Vanderhoven v. Nette, 32 Tex., 184; Wells v. Barnett, 7 Tex., 584; Walker v. McNeils, Dallam, 544; 1 Story Eq., 343; Fulmer v. Harmon, 3 Strobh., 576; Ledyard v. Brown, 27 Tex., 406; Raines v. Calloway, 27 Tex., 685; Mays v. Lewis, 4 Tex., 45; Smith v. Tucker, 25 Tex., 603; Kuhlman v. Medlinka, 29 Tex., 385; Moke v. Fellman, 17 Tex., 368; Smith v. Sherwood, 2 Tex., 460: Oliver v. Chapman, 15 Tex., 400; Cole v. Tucker, 6 Tex., 266; Sedg., on Dam., 26, 27, 38, 97, 98, 100; Bracken v. Neill, 15 Tex., 115; Flack v. Neill, 22 Tex., 255.

MOORE, ASSOCIATE JUSTICE.—This suit was brought by the appellee, Jacob Obert, to recover of appellant, Joseph Landa, damages for a slander, which he alleges said Landa published concerning him, also for damages on account of a malicious

prosecution alleged to have been instituted against him by
Landa, and to avoid a contract of settlement made between
himself and Landa for duress, and to recover the money
paid on said settlement, and the principal and interest due
him on the notes and accounts surrendered to Landa on said
settlement.

Quite a number of witnesses were examined on both sides
in reference to each of these causes of action set up in the
petition, and the jury were instructed upon them at length
by the court. It seems, however, from the verdict, the jury
only found in favor of Obert on the question of duress. It
is therefore unnecessary for us to give a critical consideration
to the questions presented in the record relating to the other
grounds of action.

No objection has been taken to the charge of the court on
the subject of slander; and from such examination as we
have given it, we do not perceive that there is anything in it
of which appellant can make any serious complaint.

But, in regard to malicious prosecutions, the charge seems
not so unexceptionable. The jury were correctly told that,
to entitle the plaintiff to recover on this branch of his suit,
it must appear that he had been prosecuted by the defendant
without a probable cause, and with a malicious intent, and
that the prosecution was at an end.

We do not think, however, they were informed with suf-
ficient clearness what in law would amount to probable cause,
or the want of it.

What facts and circumstances amount to probable cause is
a pure question of law. Whether they exist or not in any
particular case, is a pure question of fact. The former is ex-
clusively for the court, the latter for the jury. "When the
facts are in controversy the question of probable cause must
necessarily go to the jury, and then the court must give such
instruction as will enable them to draw the correct conclusion
from the facts as they find them and the law thus given."

(Stone *v.* Crocker, 24 Pick, 81; Center *v.* Spring, 2 Iowa, 393; 2 Greenl. Ev., sec. 454.)

"No exclusive definition of probable cause," as is said in Cole *v.* Curtis, 16 Minn., 195, "can be given, but that most approved by authorities, and which commends itself to us as the true one, is that laid down by Mr. Justice Washington in Munns *v.* Dupont *et al.* 3 Wash. C. C., where he defines it to be 'a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.'" (4 Cush., 217; 2 Den., 617; 17 Ill., 63; Wheeler *v.* Nesbitt, 24 How., 545; Stansbury *v.* Fogle, 27 Md., 381.)

This defect in the charge, however, is one merely of omission, of which appellant cannot complain. But the instructions given by the court, that the jury might in assessing damages allow the plaintiff such expenses of prosecuting this suit as were proven, not to exceed the amount alleged in the petition, is of a different character. It is obvious, from the petition and evidence introduced by the plaintiff to prove the value of counsel fees for prosecuting this suit, that the court by this instruction intended the jury to understand that plaintiff was entitled to recover such fees as a part of his damages, if the jury found in his favor in this branch of the case.

When a party is entitled to vindictive damages, the jury in making up their verdict, may, no doubt, if they are so disposed, consider the plaintiff's expenses in prosecuting the suit. And if their verdict is not so grossly excessive as to warrant the court setting it aside, no inquiry can be made as to the inducement operating on their minds in reaching their conclusion. And there are, unquestionably, cases in which the court has suggested such expenses as a proper subject for the consideration of the jury in fixing damages that should be allowed the plaintiff. But we are of opinion that the decided weight of authority is against the proposition that the plaintiff has the

right to claim his counsel fees, even in such cases, as a part of his damages. For if so, and the jury failed to allow them, it would seem their verdict should be set aside. But no case can be found, we imagine, where a verdict has been set aside on this account.

There is, unquestionably, some conflict in the decisions, and we readily admit that some of the earlier decisions of this court tend in some degree to maintain the proposition that when fraud or malice are of the gist of plaintiff's action, he may recover his counsel fees in prosecuting the suit as part of his damages. But while we do not mean to intimate that there are no cases in which the plaintiff may be entitled to their recovery, he is only entitled to do so, as we think, where they are a part of the damages resulting as the natural and proximate consequence of the act complained of. (Hicks *v.* Foster, 13 Barb., 663.)

In Lincoln *v.* The Saratoga and Schenectady R. R. Co., 23 Wend., 425, Chief Justice Nelson, in delivering the opinion of the court, remarks, "The charge as to expenses, beyond taxable costs and counsel fees, in conducting the suit, as a specific item of damages to be taken into account, I am inclined to think was erroneous. These have been fixed by law, which is as applicable in damages as in debt."

And in Day *v.* Woodworth, 13 How., 363, while vindicating the principle allowing the jury to give exemplary, punitive, or vindictive damages in certain cases, Green, J., says, "That while damages assessed by way of example may indirectly compensate the plaintiff for money expended in counsel fees, these fees cannot be taken as the measure of punishment, or as a necessary element in its infliction. As has been well remarked, " if the plaintiff is to recover damages for his counsel fees when he succeeds, he ought to pay the defendant like fees when he fails in his suit. The law, however, entitles the defendant to no such redress." (13 How., 363.) In Steppe *v.* Smith, 71 Pa. St., 286, the Supreme Court of Pennsylvania reaffirms the case of Good *v.* Mylin;

35

8 Barr, 57, which expressly overrules Wirt v. Vickers, 8 Watts, 227, and Rogers v. Falls, 8 Barr, 159, and holds it clearly erroneous to instruct the jury, in case of *tort*, to include in their verdict expenses incurred in establishing plaintiff's right. "So to charge," says the court, "was to forget that only such damages could be recovered as arose out of the injury, and not to allow them as a consequence of bringing the suit. This was wrong in logic as well as in law." In Howell v. Scroggins, 48 Cal., 356, the court below had instructed the jury that they were not limited in assessing damages to mere compensation, but might give exemplary damages, and could take into consideration the plaintiff's expenses in prosecuting the suit. The court, after a review of the general current of decisions on the subject, were reluctantly compelled to reverse the judgment. It says, "The damages found by the jury were not excessive, and if we could feel at liberty to disregard the error of the court below, or were satisfied that it did not influence the action of the jury, we should affirm the judgment." In Earle v. Tupper, 45 Vt., 283, the court say, "The great weight of authority seems to be opposed to the allowance of counsel fees as an element of damages, even in cases proper for exemplary damages; at least there is so much authority that way, that this court is at liberty to disregard these the other way, if necessary to follow the rule most in accordance with legal principles and sound reason." (See also Hoadly v. Watson, 45 Vt., 289; Barnard v. Poor, 21 Pick, 378; Fairbanks v. Winter, 18 Wis., 287; Stimpson v. The Railroad, 1 Wall., Jr., 167.)

As has been already remarked, the verdict in favor of the plaintiff seems not to have been based on this branch of plaintiff's action. If, therefore, there was no other error for which the verdict should be reversed, the consideration of this point would at present have been unnecessary. But as the case will have to go back to the District Court, we cannot say that its determination may not be essential to the correct decision of the case on another trial.

The alleged duress which is evidently the main ground of action, and the one upon which the jury rendered their verdict, consists entirely in threats of a civil action and criminal prosecution, unless plaintiff would, without delay, satisfactorily settle and account with the defendant in this case for the money claimed to have been embezzled by plaintiff. On this branch of the case the court instructed the jury, as follows: "If you believe from the evidence that the plaintiff made the settlement referred to under a threat or threats made by defendant of mischief to the person or property of the plaintiff, or to his good name, and the threat or threats were of sufficient importance or severity to influence the conduct and overcome the prudence of a person of sound mind and ordinary firmness, then you will consider the settlement referred to as void."

By this charge the court, as we think, extended the rule, as to duress *per minas*, much beyond the limit within which it is restricted by all well-considered cases upon the subject which have come under our observation. And certainly we have been cited to no decision by appellee's counsel which supports it.

Duress which avoids a contract is either by unlawful restraint or imprisonment; or, if lawful, it must be accompanied by circumstances of unnecessary pain, privation, or danger; or when the arrest, though made under legal authority, is for an unlawful purpose, (Phelp *v.* Zuschlag, 34 Tex., 380;) or from threats calculated to excite fear of some grievous injury to one's person or property. (1 Pars. on Cont., 392; Met. on Cont., 23.)

Contracts could only be avoided for duress *per minas*, according to the earlier decisions, for fear of life, of loss of member, of mayhem, or of imprisonment; but it seems to be now admitted that contracts may be avoided when induced on threats of injuries for which full and adequate compensation cannot be expected from the law, (McGowen *v.* Bush, 17 Tex., 195;) or where one's necessities are so great as not to

admit of his awaiting the ordinary process of the law for his relief.

Viewing the evidence relied upon to prove duress in the most favorable light possible for appellee, it can amount to no more than threats of a criminal prosecution for embezzlement, and of a civil action for the money which appellant claimed had been wrongfully and fraudulently withheld from him by appellee. There can be no pretence that the alleged threats import a purpose to make any unusual, harsh, oppressive, or illegal use of the process, either civil or criminal, with which it is insisted appellee was threatened. Now, it is well settled, that the fear of imprisonment which constitutes duress is fear of illegal imprisonment, or imprisonment under such circumstances as, if carried into effect, would amount to duress by force. Hence, the mere fear of imprisonment from a lawful prosecution cannot possibly be regarded as duress. (Metc. on Conts., 24; Pars. on Cont., 394.)

In the case of Harmon *v.* Harmon, 61 Me., 227, the court, in discussing the doctrine of duress *per minas*, says: "A prosecution cannot come under either of the items of personal violence. Unless, therefore, it implies imprisonment, it cannot constitute duress. All the cases to which our attention has been directed, or which, after considerable research, we have been able to find, hold threats of prosecution sufficient to avoid an act only as they are connected with threats of imprisonment, either illegal in its beginning, or which by abuse becomes illegal. * * * There is, in this case, no allusion to any precept issued or to be issued. A threat of prosecution simply, before the commencement of legal proceedings, does not necessarily include an arrest. It is no more than an assertion that the proper steps will be taken to institute a process, which may or may not result in an arrest of the person. And whether the process is to be initiated before a magistrate or the grand jury, the law so shields it by the oath of the complainant and witnesses, as well as the official oaths and responsibilities of the magistrates, that the danger of im-

prisonment from such a threat is too remote and contingent to overcome the will of an innocent person of common firmness."

And certainly, if the threat of criminal prosecution does not amount to duress, it is unnecessary to say that the mere threat of a civil suit will not do so.

While the finding of the jury, as we have said, must, from their verdict, have been predicated upon the alleged duress, still they gave appellees the sum of one thousand dollars "for attorneys' fees in this suit." In this particular the verdict is clearly unauthorized and erroneous, not only for the reasons already stated, but also because the petition contains no allegations in reference to the expenses of prosecuting this branch of the suit. Nor does the evidence show the value of attorney fees for prosecuting the suit merely for the alleged duress. Neither were the jury warranted by the instructions given them by the court in allowing counsel fees, except as damages for malicious prosecution.

The reading of the affidavit and motion to change the venue was certainly irregular and uncalled for, and appellant's objection to it should have been sustained.

The objection to the answer of the witness, Schimmelfining, to the sixth direct interrogatory was well taken. The effect of this answer is to prove by general reputation that Landa charged Obert with the theft on which the action for slander is predicated. General reputation is not admissible to prove publication. Nor was it proper to allow the statement made by Landa, as a witness on the trial of Obert for embezzlement, to be given in evidence without qualification. Certainly his statements as a witness were not admissible in support of the action for slander. (Osborn *v.* Fosher, 22 Mich., 209.) And if the proper exceptions were taken to this evidence and that of the witness Schimmelfining, they should have been sustained. The bill of exceptions does not state the grounds upon which this, as well as the other testimony, claimed to have been improperly allowed to go to the jury,

was objected to; we cannot therefore say that it exhibited any error of which appellant can complain.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.