No. 2536.

## GULF, COLORADO & SANTA FE RAILWAY COMPANY *v.* C. C. GORDON.

1. ACCORD AND SATISFACTION.—To constitute an accord and satisfaction of a claim for unliquidated damages, it must appear that the claimant agreed to receive something in lieu of the sum to which he believed himself entitled, and that this has been paid. A promise to pay by the agent of the party against whom the damage is claimed when made under such circumstances as not to impose an obligation on the injured party to receive payment is not sufficient.

2. SAME.—Though an accord may be based on an implied contract, yet the implied contract must be one which results as a necessary consequence from the facts which it is claimed create it.

3. CASES REVIEWED.—Hinkle v. Railway, 15 American and English Railway Cases, 391, and Stockton v. Frey, 4 Gill, 412, reviewed.

4. ACCORD AND SATISFACTION.—An accord must be followed by complete execution before it can operate as a bar to the original cause of action. The acceptance of a promise can affect such a result only when it clearly appears that the intention of the claimant was to accept the promise in full satisfaction of his claim.

5. ESTOPPEL.—A declaration, though untrue, can never operate as an estoppel if the person to whom it is made is not induced by it to do something which he was not under legal obligation to do.

6. CHARGE OF COURT.—Ordinarily the repetition in a charge of the court of the elements of damage which the jury may consider, will not require a reversal of a judgment rendered against the defendant; but when the verdict seems excessive a reasonable presumption arises that the jury may have been influenced thereby.

7. DAMAGES—CHARGE OF COURT.—An element of damages based on the future capacity of the injured party to earn money and to acquire greater skill with which to earn it when it is shown that he was physi-

cally disabled by the injuries inflicted, should not be referred to by the court in charging the jury when there is no evidence to enable them to intelligently consider it.

8. VERDICT.—The jury in an action for damages for personal injury against a railway company was asked to return answers to the following questions: "4. Was the wreck which occasioned the injury caused by a defective or unsafe road bed? 5. Or was the wreck caused by a defective locomotive?" The jury answered "yes" to both questions. *Held,* that when the verdict seems excessive, though such conflicting findings would not ordinarily authorize a reversal, yet such finding may be looked to in determining whether the jury has given due consideration to the evidence.

9. FACT CASE.—See opinion for facts on which a verdict for twenty-five thousand dollars actual damages, and for sixteen thousand nine hundred and twenty-seven dollars and forty cents exemplary damages for personal injuries, a remittitur being entered for the latter, was deemed excessive.

APPEAL from Austin. Tried below before the Hon. H. Teich-mueller.

*Chesley & Haggerty,* for appellant: On the question of accord and satisfaction they cited Hinkle v. Minneapolis & St. Louis Railway Company, 15 American and English Railway Cases, 691; Rideal v. Great Western Railway Company, 1 F. & F., 706; Stockton v. Frey, 4 Gill (Md.), 406; Roberts v. Eastern Counties, 1 F. & F., 460; Peace v. Stamet, 4 J. J. Marsh (Ky.), 449; Coon v. Knap, 8 New York, 402.

On estoppel, they cited 2 Pomeroy's Equity, 801 et seq.; Horn v. Cole, 51 New Hampshire, 287-289; Edwards v. Dickson, 66 Texas, 618; Insurance Company v. Mowen, 96 United States, 544.

That there was error in charging about a matter concerning which there was no evidence, they cited Austin v. Talk, 20 Texas, 164; Andrews v. Smithwick, Id., 111; Patton v. Rucker, 29 Texas, 406.

That the verdict was excessive, unreasonable and oppressive, they cited Darcy v. Turner, 46 Texas, 30; Texas & Pacific Railway Company v. Morin, 66 Texas, 228; International & Great Northern Railroad Company v. Underwood, 64 Texas, 464; Gulf, Colorado & Santa Fe Railway Company v. Dorsey, 66 Texas, 153, 154; Houston & Great Northern Railway Company v. Randall, 50 Texas, 260; Pierce on Railroads, 307, 308, and authorities cited.

*Davis & Davidson, F. D. Minor,* and *Bell & Shelburne,* for appellee: On accord and satisfaction, they cited Mayfield v. Cotton, 21 Texas, 1; Overton v. Conner, 50 Texas, 113; 2 Addison on Torts, Wood's edition, 587; Hinkle v. Minneapolis Railroad Company, 391; Sullivan v. Frim, 4 Green (Iowa), 544; Wiley v. Warden, 27 Vermont, 655.

That there was no estoppel, they cited Edwards v. Dickson, 66 Texas, 618; Bigelow on Estoppel, third edition, 486, 487, 490, 491, 541, 543; Musgrove v. Sherwood, 54 Howard (N. Y.), 388; White v. Ashton, 51 New York, 280; Langdon v. Dowd, 10 Allen, 433; Jackson v. Allen, 120 Massachusetts, 64; Keating v. Orre, 77 Pennsylvania State, 89; Turnipseed v. Hudson, 50 Mississippi, 429; Allen v. Hodge, 51 Vermont, 436; Planters Insurance Company v. Bank, 63 Alabama, 585.

That the measure of damages was correctly given in the charge, they cited Gulf, Colorado & Santa Fe Railway Company v. Greenlee, 63 Texas, 350; International & Great Northern Railroad Company v. Ormand, 64 Texas, 485; Galveston Oil Company v. Malin, 60 Texas, 645; Houston & Texas Central Railway Company v. Boehm, 57 Texas, 152; International & Great Northern Railroad Company v. Kindred, 57 Texas, 503.

That the verdict was not excessive, and should not be disturbed unless it clearly appears that it was influenced by passion or prejudice and is without evidence to support it, they cited International & Great Northern Railroad Company v. Smith, 1 Southwestern Reporter, 565; Gulf, Colorado & Santa Fe Railway Company v. Dorsey, 66 Texas, 148; East Line & Red River Company v. Smith, 65 Texas, 169; International & Great Northern Railroad Company v. Ormand, 64 Texas, 485; International & Great Northern Railroad Company v. Gilbert, 64 Texas, 536; Texas & Pacific Railway Company v. Garcia, 62 Texas, 286; Gulf, Colorado & Santa Fe Railway Company v. Greenlee, 62 Texas, 344; Houston & Texas Central Railway Company v. Leslie, 57 Texas, 84; Texas & Pacific Railway Company v. Hardin, 62 Texas, 369; Houston & Texas Central Railway Company v. Boehm, 57 Texas, 152; International & Great Northern Railway Company v. Dawson, 62 Texas, 261; Houston & Texas Central Railway Company v. Shafer, 54 Texas, 649; Texas & Pacific Railway Company v. Lowry, 61 Texas, 154; Shaw v. Railway Company, 8 Gray (Mass.), 45; Hanvert v. Railway Company, 24 Howard (N. Y.), 184; Belair v. Railway Company, 43 Iowa, 662; 18 American and English Railroad

Cases, 19, 234; Rockwell v. Railway Company, 64 Barbour, 438; Shultz v. Railway Company, 46 New York (Super.), 211; Solm v. Railway Company, 13 Nevada, 106.

STAYTON, ASSOCIATE JUSTICE. The appellee, while in the employment of the appellant as a locomotive engineer, was injured in the derailment of the locomotive which he was operating, and this action was brought to recover damages. It is alleged that the injuries resulted from defects in the railway track and locomotive, and damages actual to the amount of twenty-five thousand dollars and exemplary for a like sum were claimed. There was a judgment in favor of the appellee. The defendant pleaded matters in bar of the action, which it is claimed operate as an accord and satisfaction of the claim now asserted and as an estoppel. The substance of these pleas is thus stated in brief of counsel for appellant:

"That shortly after plaintiff received his injuries, and while he was still suffering therefrom, he applied to Webster Snyder, the general manager of defendant's road, and who had general charge of its business management, for pecuniary assistance, and said Snyder consented on behalf of defendant, and promised in substance to render him such assistance as he and his family might need, and to see him through until he was sound; this promise being made upon the express representation and assurance by plaintiff that he had no intention of instituting suit against defendant company for damages on account of his injuries, and repeated assurances that no such suit would be brought; and that, but for these assurances upon the part of plaintiff, no such promise would have been made or assistance given—of all of which plaintiff was duly advised before receiving such assistance. That, in pursuance of his promise, Mr. Snyder, on January 13, 1886, at defendant's expense, had plaintiff taken from Sealy to Galveston and there placed in a private hospital in charge of skillful physicians for medical and surgical treatment, where he remained at defendant's expense for a period of about seven months, when he left the hospital and returned to Sealy on his own accord and contrary to the advice of his physicians, who assured him that if he would remain in the hospital under treatment for a short time longer he would be fully restored.

"It is also alleged that plaintiff left the hospital without de-
fendant's fault, and that, had he remained there as desired, he
would have been fully restored.

"It is also alleged that about ten days before this suit was in-
stituted plaintiff was in Galveston and called upon Mr. Snyder,
and desired an agreement in writing that defendant company
would take care of him, which Mr. Snyder declined upon the
ground that he did not recognize any legal liability of the com-
pany to him, and that what had been done for him was out of
sympathy for his condition and with the express understanding
that he would not put defendant company to the annoyance
and expense of a suit, but that he (Snyder) intended to keep
his promise to see him through until he was sound, and plaintiff
expressed himself satisfied to accept said Snyder's promise in
the matter, and then asked for and received from him a further
sum of one hundred dollars, in pursuance of said promise and
as a result of their conversation, which would not have been
given but for plaintiff's assurance that he would accept said
Snyder's promise for continued assistance, and that he should
bring no suit.

"It is charged that this suit was filed about ten days after the
above conversation and receipt of the one hundred dollars,
without any further notice or conversation with said Snyder or
any other person representing defendant; and, but for the filing
of this suit, defendant would have performed all of its said
promises made in behalf of plaintiff.

"It is also alleged that defendant, in pursuance of its said
promise to plaintiff, had expended in his behalf and for his
account one thousand nine hundred and forty-seven dollars and
forty cents, a bill of particulars of which was made a part of
the answer, showing that at different times, from January 13
to November 8, the same year, defendant had paid plaintiff one
thousand dollars in cash, and had expended in his behalf nine
hundred and forty-seven dollars and forty cents by way of
hospital expenses, medicines, clothing, etc., for himself and
family."

In the brief for appellee it is conceded that the substance of
the plea is correctly stated if the following quotation from it
be added: "That on November 8, 1886, plaintiff again went from
Sealy to Galveston and called upon Mr. Snyder, the general man-
ager of defendant road, and suggested that the time would soon
expire in which he could sue and desired him, Snyder, to give

him a written agreement that the defendant company would take care of him, which proposition the said Snyder declined, upon the ground that he did not recognize any legal liability of defendant to him, and told him if he wanted to sue he could do so, but that what he had done for him was out of sympathy for his condition."

To constitute an accord and satisfaction it must appear that the appellee agreed to receive something in place or stead of the unliquidated sum which he conceived himself entitled to receive from the appellant on account of his injuries, and that this has been paid; and there can be no pretence that any promise made by the company's agent was intended to bind himself personally and thus operate as a payment, as it has been held that the promise of a third person would.

It can not be claimed that any express agreement was alleged, but it is urged that an implied agreement not to sue is raised by the facts stated, and that in consideration of this the appellee received money and assistance having a money value. There can be no agreement expressed or implied when both parties have no intention to make it, or when one has but the other has not.

The plea states that when application for assistance was made it was given on the declaration of the plaintiff that he had no intention to institute a suit to enforce a claim for damages against the company, but there is no averment that the appellee declared he would not enforce his claim if the appellant would render him the assistance desired, nor that this was made a condition upon which alone assistance would be given. Without requiring such a stipulation the plea states that the appellant "consented and promised, in substance, to render him such assistance as he and his family might need, and to see him through until he was sound."

It is alleged that subsequently the appellee made known to the company that the time would soon expire in which he could maintain an action, and that he then asked that the company should make a contract "to take care of him, which proposition said Snyder declined upon the ground that he did not recognize any legal liability of defendant company to him." He then asked not so much as the company alleged it had before that time consented to give, and it then denied any liability, which must be understood to mean any liability aris-

ing out of the facts from which resulted the injury or existing by force of a former agreement, which, it is contended, ought to be implied.

It would be difficult to find any reasonable ground on which to base an implied contract, when it clearly appears that the person asserting such a contract, when called upon to make it express and to put it in enduring and legal form, declined to do so on the ground that no facts existed which would entitle the other party to such rights as the contract asked to be implied would give. It would be equally difficult to find ground on which to base an implied contract not to sue, when the right to sue was recognized by the party asking the implication, and when the consideration on which the asserted contract is founded is declared to have been delivered or given through mere sympathy, and not as a matter of right under a contract sought to be established by implication, even though this active exercise of sympathy may have been under the belief that the person to whom it was extended would, on account of it, forego some right, and even though this belief of the agent of the company may have been induced by a declaration of an absence of intention to exercise the right in the future. That an accord may be based on an implied contract we do not doubt, but before a right will be deemed to have been so surrendered, the implication must be one necessarily arising.

In the case of Hinkle v. Railway Company, 15 American and English Railway Cases, 391, it appeared that an employe of the railway company had been injured while using defective machinery, and some time afterwards, on account of this, he made a claim for a sum paid to a physician, and for one-half time while disabled, the sum claimed on each of them being stated, and this was paid. In an action subsequently brought to recover for the injuries, it was held that the plea of accord and satisfaction was sustained by the facts, but the court said: "If the payment by the railroad company had been voluntarily made, and not pursuant to an asserted claim of the defendant, or if any other circumstance had given to it the character of a gratuity, or of recompense in part only, the result would have been different."

In Stockton v. Fry (4 Sill, 412), a passenger injured by the upsetting of a stage coach agreed with the proprietors if they would pay his tavern bills, physician's bills, and give him transportation to a named place, that he would be satisfied and

bring no suit on account of the injuries. This agreement was fully complied with, and after this he brought an action, and it was held that he was barred by the accord and satisfaction. The facts of these cases are not the facts alleged in the plea before us.

If, however, it could be held, in the face of appellant's refusal to make an express contract, that an implied contract existed, and that its terms were sufficiently certain (a matter about which there would be great doubt if all the appellant's averments as to what it agreed to do are taken as true), still it is evident from the pleas that the consideration to be paid for the appellee's agreement not to sue, had not been paid when this action was brought. An accord must be followed by a complete execution before it can be considered a bar to the original cause of action. (Overton v. Conner, 50 Texas, 117.) No mutual agreements based on new considerations are alleged which could be deemed to operate a satisfaction.

Cases have arisen in which it was held that the acceptance of a provision operated a satisfaction, but this was in cases in which this clearly appeared to be the intention of the parties. The acceptance of the provision of a third person may operate as a satisfaction, but there is no pretense that the agent of the appellant, who transacted all matters pleaded, was intended to bind himself personally or that the appellee understood him to do so. When the appellant declined to make an express contract in reference to the whole matter, it certainly could not be held that the appellee had accepted mere loose and indefinite provisions in satisfaction of an implied agreement for anything alleged in the plea.

The plea of accord and satisfaction not being sufficient, does an estoppel arise upon the facts pleaded? The plea must be considered in relation to the cause of action asserted in the petition. The plaintiff claims that the defendant has been indebted to him since the time he received the injuries of which he complains, and not that some new obligation or liability has arisen by reason of transactions existing between them since that time. If such a liability exists, no declaration made by the appellee as to his intention not to enforce by suit that liability could increase or lessen it, and it stands now as it did before such declarations may have been made, except as the liability may have been diminished by payments made to or for the benefit of the appellee.

The position of the appellant has in no manner been made worse than it was before, even if it be admitted that appellant would not have paid what it did but for the belief induced by the declaration that appellee did not intend to sue, unless it were pleaded and shown that more money had been paid than the appellee was entitled to on the cause of action stated by him, and even then, if the payments were made as a mere gratuity, the appellant would not be injured.

The appellee was entitled to have paid as soon as he was injured, if his injuries resulted from facts which would render the appellant liable therefor, such sum as he was entitled to recover, and the appellant should have paid it, and no declaration made by appellee which induced it to do so in part operated any legal injury to it. A declaration, though untrue, can never operate as an estoppel if the person to whom it is made is not by it induced to do something which he was not under legal obligation to do. The same defenses are now open to the appellant as would have been had the appellee never expressed any intention not to sue.

The verdict was for twenty-five thousand dollars as actual damages and for sixteen thousand nine hundred and twenty-seven dollars and forty cents as exemplary damages, less the sum of one thousand nine hundred and twenty-seven dollars and forty cents, which had been paid to or for the appellee. The appellee remitted the exemplary damages and the sum of one thousand nine hundred and twenty-seven dollars and forty cents, and a judgment was entered in his favor for twenty-three thousand and seventy-two dollars and sixty cents. It was urged in the court below and is urged here that the judgment is excessive, and on that ground a reversal is asked. The appellee was evidently very seriously injured, but it seems to us the judgment, in view of all the facts, is excessive, and we will look to other assignments of error and the facts on which they are founded, for the purpose of ascertaining whether the jury likely reached their conclusions with a correct understanding of the law applicable to the case and a discriminate consideration of the facts.

It is claimed that the court erred in authorizing, as an element of damages, actual bodily injuries not of a permanent nature as a distinct and separate item. The court instructed the jury that should they find plaintiff entitled to recover, they would proceed to answer the following questions: "What

is the amount of actual damages, if any, you find from the evidence the plaintiff to have sustained by reason of such injury? In estimating such damages you will take into consideration: 1. The actual bodily injuries the plaintiff may have received. 2. The loss of time and confinement to his sick room as a result of the injuries received. 3. Any permanent injuries he may have sustained, and the consequent diminished capacity to work, as compared with his condition before receiving such injury, if you believe from the evidence that such is the effect, and also, in so far as you may find from the evidence, his increasing capacity to secure lucrative employment in his profession. 4. Any direct and natural result of the injury, such as bodily and mental pain and suffering."

The second and fourth paragraphs of the charge, which pointed out matters the jury might consider in estimating damages, are broad enough to embrace matters which might be considered under the first, and with the third all the elements of damages to which a jury ought to look. Ordinarily, the repetition of an element of damages, or the submission of the element in different forms, ought not to furnish reason sufficient to require a reversal, but when, in such case, the verdict seems excessive, a reasonable presumption arises that the jury may have been improperly influenced by the charge. The seventh assignment of error is as follows :

"The court erred in his charge in submitting to the jury as an additional element of damages, the following: 'And also in so far as you may find from the evidence, his increasing capacity to secure lucrative employment in his profession,' because there was no evidence to warrant it and the jury were practically authorized to enter into a speculative consideration of that subject without evidence upon which to base a conclusion."

The only evidence that could have had any bearing on the matter referred to in this part of the charge was, that at the time the appellant was injured, he was a healthy man about forty years of age and a machinist and engineer by profession, and it may well be doubted if under evidence of this character, the court was justified in directing the minds of the jury to a matter which, as the evidence stood, was necessarily speculative.

In Railway Company v. Brehm, 57 Texas, 153, a charge which restricted the plaintiff's right to recover for diminished

capacity to labor, to the difference between what he could earn before the injury and at the time of the trial, was condemned in a case in which the evidence tended to show that the injured person, by reason of the injury, was likely to become unable to do any labor mental or physical, although that was not his condition at the time of the trial. That case recognized the fact that a jury might take into consideration, when the evidence justified it, a future disability likely to result. from an injury, whether that disability affected the capacity of the person to perform labor which he was before qualified to do, or his capacity to acquire greater skill through which his labor would be more profitable; but such elements of damage should not be submitted to a jury where there is not evidence which would enable them intelligently to consider them. The appellee alleged that his injury resulted from a defective track and a defective locomotive. The evidence as to the condition of the track was conflicting, but it is conceded that there was sufficient evidence tending to show that the track was defective to require this court to refuse to disturb a judgment for actual damages on the ground that there was not sufficient evidence to show that the injury to appellee resulted from a defective track. There was also evidence that the locomotive was defective. That evidence came from the appellee himself, who stated that he had known of a defect in the truck wheels for some time, and this had been made known to the employe of the company whose duty it was to repair it, and that he had promised to have a new set of wheels put in when the locomoitve again went to Temple, where the shops for doing such work were, but that he was then directed to go out with the engine. He further stated that he thought the locomotive could then be safely used.

The court submitted special issues to the jury. The fourth, fifth and sixth issues were as follows: Fourth. Was the wreck which occasioned the injury caused by a defective and unsafe road bed? Fifth. Or was said wreck caused by a defective locomotive? Sixth. Or was said wreck caused by obstructions maliciously placed upon defendant's track? The jury answered yes to the fourth and fifth issues and no to the sixth.

The eleventh assignment is: "The court erred in refusing to set aside the verdict and grant a new trial upon defendant's motion because the finding of the jury upon the special issues

numbers four and five is contradictory, and indicated passion and prejudice in the minds of the jury."

The two causes combined may have brought about the wreck, but it could not be held that each was the sole efficient cause. Such is the finding of the jury, and while this might not furnish any sufficient reason for reversing the judgment, if it seemed to be based on a verdict uninfluenced by passion or other improper motive, yet it is a fact that may be looked to to ascertain whether there is reason to believe that the jury may not have given to all the evidence its due weight. As the special issues were submitted it may be that the jury only intended to find that the injury resulted from the one or the other of the causes mentioned, or from the two combined. If the jury had found that the injury resulted solely from the use of a defective locomotive, there is no reason to believe that the same damages would not have been awarded as were. While the appellant, in such case, might have been liable for actual damages, it could not well be held that the use of a locomotive which the appellee, a skilled machinist and engineer, thought, after long use and careful examination, might be safely used, was such a degree of negligence as would justify the imposition of exemplary damages.

The appellee was shown to be a sober man, and a machinest and engineer by profession, and he ought to be presumed to be reasonably well skilled therein. He knew of the defect and had every opportunity to examine it, and to know its effect as bearing upon the question of safety of the machine. Operating it, it ought to be presumed, when his own safety was involved in its use, that he examined it with the utmost care. Could such a person, so situated, ask a jury to say that the use of the locomotive by the appellant was an act of gross negligence, when he believed it could be used with safety? It seems to us not. Yet, the jury, in effect so said, for the court instructed them as to the high degree of negligence necessary to render the appellant liable for exemplary damages.

The charge of the court informed the jury that they could find for the appellee if they believed the injury resulted from either of the defects alleged, and placed the finding in either event upon the same plane as to damages actual and exemplary. The appellee evidently desired to recover exemplary damages or otherwise he would have omitted the prayer for such relief; he obtained a verdict for such damages, and we may ask why

he remitted? To this but one answer can be given, upon the record as presented. The appellant must have been conscious, or advised by his counsel, that the verdict of the jury was not the result of their dispassionate judgments, based on the evidence and the law applicable to it. If we come to the same conclusion we but concur, in so far, with the appellee.

If the verdict, in one material respect, was the result of passion or prejudice or other influence not arising from a dispassionate consideration of the evidence, the inference is very strong, when we consider the amount of actual damages given, that the same influences affected the entire verdict.

There was no error in the admission and rejection of evidence referred to in assignments of error; but, because the verdict for actual damages seems to us excessive, and because there is reason to believe that some reason other than a calm and dispassionate consideration of the evidence, under the rules of law applicable to it, led to its rendition, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered February 24, 1888.