**DALLAS JOINT STOCK LAND BANK OF DALLAS v. BRITTON.**

No. 1962.

Court of Civil Appeals of Texas. Waco.
March 3, 1938.

Opinion After Entry of Remittitur March 10, 1938.
Rehearing Denied March 24, 1938.

McCombs, Andress & Johnson, of Dallas, for appellant.

Geo. W. Barcus, Carl Mason, and W. V. Dunnam, all of Waco, for appellee.

ALEXANDER, Justice.

This suit was brought by Walter Britton against Dallas Joint Stock Land Bank of Dallas and others for damages for alleged unlawful prosecution in a contempt proceeding. At the conclusion of the evidence, plaintiff dismissed as to all others except the above-named defendant. The jury returned a verdict for plaintiffs for $4,000 actual damages and $5,000 exemplary dam-ages. The court required plaintiff to remit $1,500 actual damages and entered judgment for $2,500 actual damages and $5,000 exemplary damages. Said defendant appealed.

The following material facts are undisputed. The district court of Nueces county appointed one Gross receiver of certain land in McLennan county belonging to the Porterfield estate. Said receiver, through an agent, rented a part of said land to Britton for the year 1934, the agreement being that Britton was to pay one-fourth of the cotton raised thereon as rent for said land. During said year, Britton performed labor for said receiver for which he was not paid. In 1932, after the appointment of the receiver by the district court of Nueces county, the Dallas Joint Stock Land Bank of Dallas sued Porterfield in the district court of Dallas county for debt and foreclosure of lien on the land in question and prayed for the appointment of a receiver, and thereafter, in 1934, one Dillard was appointed such receiver. In the case of Gross v. McCallum, 123 Tex. 110, 69 S.W.2d 46, the Supreme Court held, in effect, that the receiver appointed by the Dallas court had a superior right to possession of the property. Britton moved off of the farm about September 1, 1934, and surrendered possession thereof but refused to pay rent to the Dallas receiver for the use of the land for the year 1934 on the ground that he had not been paid for the labor performed by him for the receiver appointed by the district court of Nueces county. Britton was not a party to the receivership proceedings in Dallas county. On January 5, 1935, Dallas Joint Stock Land Bank filed an application in the district court of Dallas county, where the receivership proceedings were pending, to have Britton adjudged in contempt of court on the ground that he was interfering with the receiver's right of possession to the land, and because he refused to pay the receiver the rent claimed to be due for the use of the land for the year 1934. A hearing was had on that application of January 12, 1935, and Britton was found not to be in contempt of court and was discharged. On February 15, 1935, the land bank filed another application to have Britton adjudged in contempt of court for substantially the same reasons. In this connection, it was alleged that Dallas Joint Stock Land Bank "is the plaintiff in this law suit and is suing for a debt and foreclosure of its deed of trust lien on said property, which is wholly insufficient in value to

satisfy said debt, and the rents and revenues from said property should be preserved so as to apply on said debt." A hearing was had on the last application on March 9, 1935, and Britton was found to be in contempt of court because of his failure to pay to the receiver the sum of $226.55 as rents for the use of the land for the year 1934, and it was ordered that unless he purged himself of such contempt on or before April 9, 1935, by paying said rent to said receiver, he should be punished for such contempt in accordance with law. Thereafter, on November 6, 1935, the district judge ascertained from the attorney for the land bank that Britton had not complied with the orders of the court by delivering to said receiver the rents above referred to and as a result the court on that date entered an order adjudging him in contempt of court and assessed his punishment at a fine of $100 and confinement in the county jail for a period of three days and until he had purged himself of such contempt by paying said rents, in the sum of $226.55, to said receiver. A warrant was issued for the arrest and commitment of Britton, and, as a consequence, he was arrested in McLennan county, transported to and confined in the jail at Dallas from Saturday night until the following Monday afternoon. He later secured writ of habeas corpus from the Supreme Court and was released by that court on the ground that the contempt proceedings were void. See Ex parte Britton, 127 Tex. 85, 92 S.W.2d 224. The jury found that the bank acted with malice and without probable cause in filing and prosecuting the affidavits and petitions in the contempt proceedings, and that Britton was imprisoned as a direct and proximate result of the filing of such proceedings, and that he suffered damages as hereinabove indicated. The jury further found that it was not the land bank's sole purpose in filing the affidavit in the contempt proceedings to present the facts to the judge for his decision and action, and that said affidavit was filed in wanton and reckless disregard of Britton's rights.

■ It is the bank's contention that it merely filed the affidavit in the contempt proceedings and presented the evidence in support thereof; that the judge entered the contempt decree and caused process to issue thereon, under which Britton was imprisoned; and that therefore, if Britton was unlawfully imprisoned, it was the result of the act of the judge and not that of the land bank, and since the judge in entering said decree was in the performance of a judicial act, the land bank is not responsible for the consequences thereof. We cannot sustain this contention. It should be noted that the jury found that the land bank acted with malice and without probable cause and in wanton and reckless disregard of Britton's rights in filing and prosecuting the affidavits and petitions in the contempt proceedings. A similar contention was considered by the San Antonio Court of Civil Appeals in the case of Suhre v. Kott, 193 S.W. 417, 419, and Judge Fly, in discussing the proposition, said: "Appellees lose sight of the allegation that their affidavit was falsely and maliciously made when they contend that it was their duty to make the affidavit. They have no right or authority, under the law, to start a malicious prosecution or falsely imprison a person. * * * It is clearly laid down in decisions and works of text-writers that where a defendant wrongfully causes the arrest and imprisonment of a plaintiff, or otherwise maliciously sets in motion the machinery of the law, he may be compelled to respond to the wrong committed in adequate damages. * * * It is no defense to say that the prosecution was in the course of a judicial proceeding, before a court of competent jurisdiction, for prosecutions, malicious or otherwise, are usually so initiated and pushed." See, also, 28 Tex.Jur. 446, 454, 472; 38 C.J. 437; King v. D. Sullivan & Co., Tex.Civ.App., 92 S.W. 51.

■ Plaintiff's cause of action was not barred by the one-year statute of limitation as contended by the defendant. It is true that this suit was not instituted until May 21, 1936, which was more than one year from the date of the filing of the affidavit for contempt. However, Britton was not arrested and confined in jail until November 23, 1935, and he was not discharged by the Supreme Court in the contempt proceedings until March 18, 1936. As we understand, the cause of action for damages for malicious prosecution did not arise until after the termination of such prosecution or suit in favor of Britton. 28 Tex.Jur. 445, 480, par. 21; Von Koehring v. Witte, 15 Tex.Civ.App. 646, 40 S.W. 63, error refused.

■ As above stated, the plaintiff, in addition to suing the land bank, sued the sheriff and several other parties, alleging a conspiracy to maliciously prosecute and injure the plaintiff. At the conclusion of the evidence, the plaintiff dismissed as to all de-

fendants except the land bank. Said bank now contends that, since the plaintiff dismissed as to all other defendants and thereby conceded his failure to establish such conspiracy, he was not entitled to recover against the land bank. We cannot sustain this contention. The alleged conspiracy was merely incidental. Plaintiff's complaint was of the malicious prosecution. If the land bank was directly responsible for such malicious prosecution, it would be liable even though the plaintiff failed to establish the alleged conspiracy. 27 C.J. 43; U. S. Pipe & Foundry Co. v. City of Waco, Tex.Civ. App., 100 S.W.2d 1099, par. 20.

■ The plaintiff, in order to prove a successful termination in his favor of the contempt proceedings, introduced in evidence, over defendant's objection, the opinion of the Supreme Court therein. See Ex parte Britton, 127 Tex. 85, 92 S.W.2d 224. The appellant assigns this ruling as error. It appears that later the plaintiff introduced in evidence the judgment of the Supreme Court discharging Britton in the contempt proceedings, and the trial court then withdrew the opinion of the Supreme Court from the evidence and instructed the jury not to consider the same. We have read the opinion of the Supreme Court very carefully and find nothing therein of inflammatory nature or of such damaging effect that the same could not be withdrawn by the instructions given by the trial court. Moreover, the judgment of the Supreme Court in said cause, which was clearly admissible in evidence, declared that relator was illegally restrained of his liberty and was entitled to be discharged. This language was as strong as that used in the opinion of the Supreme Court, and, since the judgment was properly admitted in evidence, we cannot say that any injustice resulted by reason of the improper admission of the opinion of the Supreme Court. This assignment is overruled.

■ The court, in submitting special issues to the jury, assumed that the land bank filed and prosecuted the affidavits and petitions for contempt in the contempt proceedings against Britton. This ruling is complained of. The record discloses that the land bank held a mortgage on the land previously cultivated by Britton, and that, according to the allegations of said bank, the land was not of sufficient value to pay the debt and it was necessary for the bank to resort to the rent due by Britton in order to enable it to collect its debt in full. The application to have Britton adjudged in contempt of court because of his failure to pay said rents to the receiver so that same could be applied to the discharge of the bank's debt was filed in the name of the bank by its regular attorneys. Said attorneys testified that one of the vice-presidents of the bank called their attention to the fact that Britton had refused to pay the rent due by him and requested said attorneys to do something about it and left it up to said attorneys to handle the matter for the bank as they thought proper. Thereupon, said attorneys, as agents and attorneys for the bank, proceeded to file and prosecute affidavits and petitions for contempt in the name of the bank. Under these circumstances, we do not think there was any error on the part of the trial court in assuming that the bank filed and prosecuted the affidavits and petitions for contempt.

■ There was evidence that Britton contracted to pay an attorney's fee of $500 and necessarily incurred other expenses in securing his release in the contempt proceeding. The trial court instructed the jury, in effect, that such items might be taken into consideration in assessing the actual damages, if any. This ruling is assigned as error. In 38 C.J. 447, § 100, it is stated that expenses incurred or paid about the original proceeding by the plaintiff, including attorney's fees incurred therein, are recoverable as a part of the actual damages in a suit for malicious prosecution, but states there is a conflict in the authorities in Texas on this question. We think, however, that the belief that there is a conflict in the authorities on this question is brought about by a failure to distinguish between attorney's fees and expenses incurred in the defense of the original proceeding, to wit, the malicious prosecution, and those incurred in the prosecution of the suit for damages for such malicious prosecution. In the latter class of cases, it is generally held that such attorney's fees so incurred by the plaintiff in the action to recover damages for the malicious prosecution cannot be recovered as a part of the actual damages, but, if recovery is to be had therefor at all, the same can be considered only in fixing the amount of exemplary damages, if any, to be allowed. 28 Tex.Jur. 506; Landa v. Obert, 45 Tex. 539; Security State Bank v. Spinnler, Tex.Civ.App., 55 S.W.2d 128; 13 Tex.Jur. 197; City of Sherman v. Williams, Tex.Civ.App., 296 S.W. 663. The authority cited in Corpus Juris as holding

that such attorney's fees cannot be recovered as a part of the actual damages in such a case is that of Landa v. Obert, 45 Tex. 539. An examination of that opinion discloses that the court there had under consideration not the attorney's fees incurred in defense of the original proceeding, that is, the malicious prosecution, but the attorney's fees incurred by the plaintiff in the prosecution of his suit for damages. Where a party is the subject of malicious prosecution and it becomes necessary for him to employ an attorney, or to incur other expenses, in order to secure his release, such expenses including the attorney's fees so incurred, are the natural and probable consequences of such malicious prosecution, and the party so bringing about such malicious prosecution ought to anticipate same as the natural and probable consequence of his unlawful acts. Consequently, he ought to be required to pay same as a part of the actual damages caused by him. In the case at bar, the land bank ought to have anticipated that, if it caused Britton to be arrested and thrown in jail because of his failure to pay the debt, it would be necessary for him to employ counsel in order to secure his release, and therefore it ought to be required to pay such attorney's fees in a reasonable amount, where so necessarily incurred. We think this holding is in accord with the weight of authority in this state. 28 Tex. Jur. 506; Hurlburt v. Boaz, 4 Tex.Civ.App. 371, 23 S.W. 446; Davis v. Teague, Tex. Civ.App., 256 S.W. 957, par. 10; Equitable Life Assurance Co. v. Lester, Tex.Civ. App., 110 S.W. 499; Daughtry v. Blanket State Bank, Tex.Civ.App., 41 S.W.2d 527, par. 7; Findley v. Michell, 50 Tex. 143; 18 R.C.L. 71, par. 54.

The award of $2,500 is not excessive. The record discloses that Britton was arrested at his home in McLennan county on Saturday afternoon and was carried away to Dallas, a distance of 100 miles, and confined in jail until late Monday afternoon. He was compelled to leave his family, consisting of a wife and four children, alone and unprotected on a farm several miles from town. There were no close neighbors except negroes. When he was arrested and taken away from his family, he left his wife and children crying and in much distress. The fact that he was compelled to leave his family in such distress increased the mental suffering endured by him while he was away from his family. He was placed in a jail with 30 or 40 other prisoners and compelled to eat the ordinary jail food for three days. In addition, he incurred attorney's fees and other expenses in securing his release. Under these circumstances, the actual damages awarded by the trial court were not excessive. In this connection see 28 Tex.Jur. 507; 13 Tex.Jur. 261, 268; 38 C.J. 451; Underwood Typewriter Co. v. Shouldis, Tex.Civ.App., 253 S. W. 935; Rust v. Page, Tex.Civ.App., 52 S.W.2d 937; Gulf, C. & S. F. Ry. Co. v. James, 73 Tex. 12, 10 S.W. 744, 15 Am.St. Rep. 743; Missouri, K. & T. Ry. Co. v. Craddock, Tex.Civ.App., 174 S.W. 965; Commercial Acceptance Trust v. Parmer, Tex.Civ.App., 241 S.W. 586.

We are of the opinion, however, that the award of $5,000 exemplary damages is excessive. The award of exemplary damages sometimes serves a twofold purpose; first, as punishment to the defendant so as to compel respect by him for the law and to deter others from similar infractions; and second, it is sometimes said that they are allowed as compensation to the plaintiff for elements of damage that are otherwise too remote to be considered in estimating the actual damages, such as expenses incurred, mental anguish, and injury to the reputation or business and the like. 13 Tex.Jur. 239. In the case at bar, the jury was properly instructed to consider as elements of the actual damages suffered the expenses necessarily incurred by the plaintiff and the mental anguish suffered and the physical discomforts endured by him as a result of the prosecution in question. There was no evidence of any injury to his business. Consequently, the only purpose to be served in allowing exemplary damages in this case was by way of punishment to the defendant. In the case of Koehler v. Sircovich, Tex. Civ.App., 269 S.W. 812, Chief Justice Pleasants expresses it as his opinion that it is illogical to permit plaintiff to recover exemplary damages and that when they are assessed it should be for public purposes and not to give extra compensation for private injury. See, also, 13 Tex.Jur. 237. In the case of Willis & Bro. v. McNeill, 57 Tex. 465, the Supreme Court suggests that, when exemplary damages are thus allowed by way of punishment for an act that is made a criminal offense under the Penal Code, the amount of such exemplary damages ought not to be out of proportion to that fixed by the Legislature as the maximum fine for the offense allowed under the criminal law. In this connection, the court in that case

said: "The legislature wisely, in the administration of the criminal law, has seen proper to limit this discretion, by providing as a general rule in those cases where a fine in money is prescribed, either as the only punishment, or as an alternative for imprisonment, that the same shall not be less nor more than a certain amount. * * * That in criminal cases, the legislature, both for the protection of society and of the individual offenders, should place a limit on the verdict of a jury, and yet exemplary damages, which are allowed only in those civil cases which are quasi-criminal in their nature, and then as a fine or penalty, should rest in the discretion of a jury, whose verdict in a great majority of cases far exceeds the highest fines allowed by law in criminal cases, is an inconsistency which may well arrest the attention of the legislative and judicial minds. By analogy, in the absence of a more definite rule, we might look to the example of the legislature in those cases in which they have fixed a minimum and maximum amount proportioned to the actual injury received." See in this connection, Tynberg v. Cohen, 76 Tex. 409, 13 S.W. 315. Under our present statute, the maximum fine for malicious prosecution is $1,000, and for conspiracy or combination to maliciously prosecute, $2,000. Penal Code, articles 1298 and 1299. In the light of the facts of this case and the law applicable thereto, we have reached the conclusion that a judgment for $2,500 would be ample punishment to the defendant and would be sufficient to deter others from similar infractions. Willis & Bro. v. McNeill, 57 Tex. 465; Tynberg v. Cohen, 76 Tex. 409, 13 S.W. 315; 13 Tex.Jur. 248; International & G. N. Ry. Co. v. Tel. & Tel. Co., 69 Tex. 277, 5 S.W. 517, 5 Am.St.Rep. 45; Gulf, C. & S. F. Ry. Co. v. Gordon, 70 Tex. 80, 7 S.W. 695.

The authorities indicate that, when a verdict is found to be excessive and there is no other reversible error, this court should not reform the judgment by reducing the amount and then affirm the judgment as reformed by virtue of the provisions of article 1856, but under article 1862, we should indicate to the appellee the amount that should be remitted and the time within which such remittitur should be filed, and, if the same is so filed, the cause should then be affirmed. See 3 Tex.Jur. 1167–1175. Accordingly, appellee is given ten days from this date in which to file a remittitur of $2,500 of the exemplary damages awarded by the trial court. Otherwise, the judgment will be reversed and the cause remanded. If such remittitur is filed within the time indicated, the judgment of the trial court will be affirmed.

### After Entry of Remittitur.

The appellee has entered the remittitur of $2,500, as required by the former order of this court. The judgment of the trial court is reformed in conformity with said remittitur and, as reformed, is affirmed. All costs of appeal to the date of the remittitur will be assessed against appellee.