P. B. Perkins, Appellant, v. Ferdinand Bakrow, Respondent.

### St. Louis Court of Appeals, May 5, 1891.

Subscriptions: EFFECT OF MISREPRESENTATIONS TO SUBSCRIBER. The defendant, and others, signed a subscription paper, by which each agreed to pay a specified amount towards the erection of an opera house, that paper reciting as a consideration that one H. would erect the opera house within specified limits. The subscription of the defendant was obtained by persons, who circulated the subscription paper, through the representation that the opera house would be erected upon a certain lot, which was not done, but there was no evidence that H. had authorized those persons to make any representation touching the location of the opera house. *Held*, that this unauthorized misrepresentation did not release the defendant from his subscription.

*Appeal from the Greene Circuit Court.*—Hon. W. D. Hubbard, Judge.

Reversed and remanded (*with directions*).

*F. S. Heffernan*, for appellant.

*Goode & Cravens*, for respondent.

Thompson, J.—This action was commenced before a justice of the peace to recover $125, subscribed by the defendant towards the building of an opera house in the city of Springfield. The subscription paper was signed by a great many persons besides the defendant, most of their names appearing below his. By its terms the signers agreed to pay to F. S. Heffernan, his associates and assigns the amounts respectively subscribed by them, at certain dates therein named. The consideration of the agreement is thus expressed : "In consideration of this subscription the said F. S. Heffernan, his associates and

assigns shall locate and build an opera house on Boonville street, near Center street, in the city of Springfield, Missouri, at a cost for the site and building of about $40,000.

In the circuit court the defendant filed a written answer, in which he admitted the signing of the subscription paper, but set up, in substance, that he was induced to sign it by representations, made by the persons who were circulating it, that the opera house would be built upon a certain lot, the location of which would be advantageous to property owned by the defendant, and that it was not so built, but was built on a different lot, and in a situation where it was of no benefit to the property of the defendant. It is nowhere alleged in the answer that the persons who made this representation had authority from Heffernan, or from the present plaintiff, who is the assignee of Heffernan, to make the representation ; they are merely described in the answer as "the persons, who represented the said Heffernan and the other persons named in the subscription paper as the individuals to whom it was made; that is to say, the persons who were going around among the citizens of the city of Springfield, soliciting subscriptions."

It appeared from the evidence that different persons, among them this defendant, took the subscription paper around among the citizens of Springfield and solicited their subscriptions; but it nowhere appears that the persons who solicited the subscription of the defendant had any authority either from Mr. Heffernan, the obligee named in the subscription contract, or from Mr. Perkins, his subsequent assignee, this plaintiff, to make any representation whatever touching the location of the proposed opera house. There was, however, evidence tending to show that two property-owners of Springfield, Mr. Foley and Mr. Headley, solicited the subscription of the defendant to the paper, and at the same time represented to him that the opera house

would be built upon a certain lot, the same described in the answer of the defendant, which lot had been selected as its site. It also appeared that the lot had been selected by Mr. Perkins, who intended to build the opera house, as its site, and that he had already broken ground and commenced excavating for the purpose of seeing whether a suitable foundation could be had upon that particular lot. It further appeared that, finding that a satisfactory foundation could not be had upon that lot, he built the opera house upon another lot, farther away from the land owned by this defendant, but nevertheless within the description of the subscription paper, at a cost of more than $65,000. At the time when the defendant signed the subscription paper, it had not been assigned by Mr. Heffernan to the plaintiff, but it was assigned by Mr. Heffernan to the plaintiff thereafter.

If the persons, who induced the defendant to sign the subscription paper had been shown to have had any authority from Mr. Heffernan, or even from Mr. Perkins, who was, in the contemplation of all the parties, to be the builder of the opera house, to make any representations as to its site, other than that contained in the subscription paper, then a question would arise, which has been discussed at the bar, and which would be entitled to serious consideration. But, as it is neither alleged nor proven that such persons had any authority from Mr. Heffernan, or from the plaintiff, to make such representations, or indeed that they had authority from them to circulate the subscription paper, the defense wholly fails.

The evidence is consistent with the assumption, that the persons who circulated the subscription paper did so because they thought the proposed opera house would be beneficial to the city, and to their property. It seems to have been intended in the nature of a proposition to Mr. Perkins, who was to be the assignee of Mr. Heffernan. Not having authorized anyone to

Perkins v. Bakrow.

vary its consideration, or to obligate himself to do differently from what the subscription paper required him to do, Mr. Heffernan had the right to accept it, and to stand upon its terms as made ; and Mr. Perkins had the same right to accept it from him by assignment, and to stand upon its terms as made. And when he fulfilled the obligation imposed upon him by the terms of the contract, he was entitled to recover the amount of the subscription from each signer.

It is argued that, to hold this defendant to the terms of the subscription, would work a fraud upon him. But a good answer to this seems to be that a party to whom a written proposal is made by another party for a contract, which written proposal is submitted to him by an intermediary, must not rely upon the oral statements of the intermediary, varying, or even defining more precisely, the terms of the written proposal, unless he knows that the intermediary has authority from the other party to the intended contract to make such oral statements. Moreover, it is to be observed, that this defense might be available to many other of the subscribers to the paper, and that, if so available and allowed, it might work a great fraud upon the plaintiff, who appears to have built the opera house relying upon the subscriptions.

As the answer sets up no defense, and the evidence fails to substantiate any, and as the making of the subscription paper is admitted, the judgment of the circuit court will be reversed, and the cause remanded with directions to enter judgment in favor of the plaintiff according to the terms of the contract. It is so ordered. All the judges concur.