P. B. PERKINS, Respondent, v. F. E. HEADLEY *et al.*,
Appellants.

St. Louis Court of Appeals, May 3, 1892.

1. **Accord and Satisfaction:** IMPLICATION FROM SILENCE. An accord and satisfaction may be proved by the conduct of the parties as well as by their express agreement. But *held,* that the mere fact that the plaintiff received from the defendants less than the amount of his claim in silence, and with knowledge that the defendants claimed to be indebted to him only to the extent of the payment made, did not conclusively and as matter of law establish an accord and satisfaction.

2. ————: ACCEPTANCE OF SPECIFIC TENDER OF LESS THAN CLAIM IN FULL SATISFACTION. *Held* further, however, in the course of discussion, that where a controversy as to the amount of the indebtedness exists between a creditor and his debtor, and the debtor tenders to the creditor the amount which he claims is due on condition that the acceptance of it should discharge the entire demand, the acceptance will constitute an accord and satisfaction as a matter of law, since one who accepts a conditional tender assents to the condition.

*Appeal from the Greene Circuit Court.*—HON. W. I.
WALLACE, Judge.

AFFIRMED (BIGGS, J., *dissenting*).

*T. J. Delaney,* for appellants.

*Heffernan & Buckley,* for respondent.

THOMPSON, J.—This was an action upon a contract of subscription. The case was tried before the court sitting as a jury, and the plaintiff had a verdict and judgment, from which the defendants prosecute this appeal. The case very closely resembles the case of *Perkins v. Bakrow,* 45 Mo. App. 248. The defendant in that case and the defendants in this case were subscribers upon the same subscription paper. The petition in this case alleges in substance that, in the month of ——, 1887, the defendant with others contracted in

writing by way of a subscription to one F. S. Heffernan, his associates and assigns, as follows, to-wit:

"We, the undersigned, agree to pay F. S. Heffernan, his associates and assigns, the respective amounts subscribed by us, to become due and payable to the said F. S. Heffernan, his associates and assigns, as follows:

"One-third payable on demand, when the provision of this subscription is accepted by the said F. S. Heffernan, his associates and assigns.

"One-third, when the opera house hereafter mentioned is inclosed.

"One-third, when said opera house is completed.

"In consideration of this subscription the said F. S. Heffernan, his associates and assigns, shall locate and build an opera house on Boonville street, near Center street, in the city of Springfield, Missouri, at a cost for the site and building of about $40,000."

(Here follow names of subscribers and amounts subscribed, including Headley Bros., $1,000.)

The petition further alleges the assignment of the subscription paper by the said Heffernan to P. B. Perkins, the plaintiff herein, full performance of the contract on the part of the plaintiff, his demand upon the defendants for payment, and their refusal to pay.

The answer admits the signing by the defendants of the subscription paper set out in the petition for the purposes therein stated, in the sum of $1,000, and then sets up two special defenses in separate counts as follows: *First.* For the first defense the answers avers that the subscription was made and obtained on, representations made to said defendants, that said opera house would be built on a site at or near the spice mills on the east side of Boonville street, which said representation was the sole inducement for said subscription; that said opera house was not built as and where it was represented it would be built, to the great injury of

defendants, who owned no property in the vicinity of the site selected, but who owned much valuable property at and near the place formerly selected. It is perceived that this paragraph of the answer does not allege that the representations were made by Heffernan, or by the plaintiff, or by anyone authorized to make them for either. We add, after a careful examination of the testimony, that there was no substantial evidence of any such representation having been made either by Heffernan or by this plaintiff, or by anyone authorized by Heffernan or this plaintiff so to make representations. This requires us to lay this paragraph of the answer and all the evidence adduced in support of it, and the declarations of law given by the court with reference to it, entirely out of view, and to deal with it as we dealt with the case of *Perkins v. Bakrow, supra,* by holding that it is no defense whatever to an action upon this contract, that the defendants may have been induced to sign it by persons not authorized by the obligees therein named.

The second paragraph of the answer, setting up a separate special defense, is as follows:

"And, for another defense, defendants say that, after the subscription as alleged by plaintiff, the site of said opera house was changed from at or near the spice mills to the place south of Center street, where it is now built; and the plaintiff and defendants, in consideration that said Headley Bros. should consent to said change of location, agreed that their subscriptions should be for the sum of $500; that pursuant to said agreement defendants paid, and plaintiff accepted, the said sum of $500 in full payment on said second contract."

This special defense, and the evidence adduced in support of it, introduced an element which was not in the case of *Perkins v. Bakrow, supra,* and which

requires a different treatment from that which disposed of that case. There was evidence, though of an unsatisfactory character, but, nevertheless, we feel bound to say, evidence such as a jury might have believed, sustaining the special defense thus pleaded. That evidence tended to show that there was a committee of citizens for the promotion of the building of the opera house, which was evidently deemed an object of public benefit to the city of Springfield, and to property-owners therein; that Oscar M. Headley, one of the defendants in this action, was an active member of that committee; that Oscar M. Headley, for the period of about three months, circulated the subscription paper on which the present action is brought, and represented to persons, whose subscriptions he solicited, that the opera house would be built on Center street near the spice mills; that ground was definitely broken by Perkins, this plaintiff, on a lot at that location, which would naturally have the effect of impressing the public with the conclusion that it had been definitely selected as the site for the opera house; that it was finally found that this lot was unsuitable, because too small; that, accordingly, a meeting of the committee was held, at which the change of site was discussed; that at this meeting it was perceived that *these defendants* would be more injuriously affected by the change, by reason of the location of their property, than would any other subscriber; that, accordingly, this plaintiff at that meeting publicly announced that he would make it right with these defendants; that he subsequently authorized one Hornbeak, whom he had appointed to collect the subscriptions, to arrange the matter with the defendants; and that Hornbeak, acting under this authority, did arrange with these defendants that they should pay one-half of their subscription, and that the other half should be released, and that they paid $500 of it accordingly.

This evidence was strongly rebutted. It is not claimed that the site, which was selected, was not within the limit expressed in the written subscription paper. The plaintiff testified pointedly that he neither agreed, nor intended, nor represented, that he would select the site near the spice mills, and that he never authorized any one to make such representations for him. He also testified that he broke ground on the lot near the spice mills at the request of this committee, which included Amos M. Headley, one of these defendants, and for no other reason. He did admit in substance that, at the meeting of the committee above referred to, he did say that he would arrange the matter with the defendants, recognizing some claim on their part in consequence of having to select a site so far from their property; but he testified that what he proposed was to take one-half of their subscription in groceries, and that he did purchase $300 worth of groceries of them, when they repudiated the arrangement and sued and got a judgment against him for the amount. They, on the other hand, gave evidence denying this arrangement about taking half of the subscription in groceries; and their evidence was to the effect that they were not in the grocery business at that time, though one of the Headley Brothers was. The plaintiff also denied totally that he ever authorized Hornbeak to make any adjustment with the defendants of their subscriptions by taking less than the full amount which they had subscribed, and in this he was distinctly and pointedly supported by the evidence of Hornbeak himself. But the defendant's evidence was to the effect, that the plaintiff told them that Hornbeak was so authorized, and that Hornbeak did agree to adjust their subscription for one-half; and that they did pay the $500 in three separate installments of $166 each, in pursuance of that agreement, and that the money was received by the plaintiff accordingly.

In reference to this evidence the defendants tendered the following declaration of law, which the learned judge refused:

"If the court, sitting as a jury, believes from the evidence that, after the subscriptions by defendants the site was changed and the present site selected, the plaintiff stated to the defendants that he would make it all right with defendants on account of the change in said site, and if the court, sitting as a jury, believes that defendants relied upon said promise, and made no objection on account of said change, and if the court sitting as a jury further believes that, when the first call was made on defendants on said subscriptions, they claimed to be liable only for $500 and paid accordingly, and that said claim was communicated to plaintiff, who remained silent and permitted defendants to make two other payments on that basis, and that said first payment and claim was made before the building was begun, then defendants are entitled to recover."

From the hypothesis of fact contained in this instruction the jury would be warranted in finding that there had been an accord and satisfaction between the parties, but they would not be obliged to draw that conclusion as a conclusion of law. An accord and satisfaction is a contract, and, like other contracts, requires a consideration to support it. But where there is a dispute between the parties as to their respective rights, and for that reason the obligee in the contract agrees to take less than the terms of the contract import, that, in general, furnishes a good consideration. Such was plainly the case upon the evidence here, assuming that a jury would believe it as given in behalf of the defendants. That evidence tended to show not only a claim of a deviation from the original contract as made and understood, but it also tended to show that

the plaintiff admitted that the defendants had some claim to an abatement of their subscription by reason of that deviation. This state of facts probably furnished a good consideration to support an accord and satisfaction.

An accord and satisfaction may, as in the case of other contracts, often be proved by the conduct of the parties, as well as by their express agreement. We have no difficulty in holding that the hypothesis of fact contained in the above instruction furnished evidence tending to show an accord and satisfaction, from which the jury would be warranted in making that deduction. We are of the opinion that there is no rule of law which would oblige them to make it. We know of no rule of law which, under the collection of facts there stated, ascribes the conclusion of an accord and satisfaction to the mere silence of the plaintiff, which silence, it is easy to conclude, may equally have been the result of some other motive. A creditor does not, by voluntarily accepting a part of what is due him, release the remainder. But if there is a controversy between him and his debtor as to the amount which is due, and if the debtor tenders the amount which he claims to be due, but tenders it on the condition that the creditor accept it in discharge of his whole demand, and the creditor does accept it, that will be an accord and satisfaction as a conclusion of law, the principle being that one who accepts a conditional tender assents to the condition; he cannot take the money and reject the terms on which it is tendered, when the party making the tender announces to him that he will not pay it on any other conditions. In order to create an accord and satisfaction, as a conclusion of law, on the preliminary hypothesis of fact, contained in the above instruction, it would have been necessary for the defendants to tender the $500 on the condition that it be accepted in full satis-

faction, and to decline making payment unless that condition were acceded to. If, then, the plaintiff had accepted the tender, he would have estopped himself from maintaining an action for the remaining $500. These principles are elementary, and they justified the learned judge in refusing to give this instruction.

It results that the judgment must be affirmed. It is so ordered. Judge ROMBAUER concurs. Judge BIGGS dissents.