**EARLY–FOSTER CO. v. W. F. KLUMP & CO.** (No. 6237.)

(Court of Civil Appeals of Texas. Austin. Jan. 19, 1921. Rehearing Granted March 16, 1921.)

1. **Trial** &⟶168—**Court should not direct verdict where there is a material issue of fact.**

Where there is a material issue of fact, it is error for the trial court to take the case from the jury and to peremptorily instruct a verdict.

2. **Accord and satisfaction** &⟶1—**Must be consummated by a meeting of the minds of the parties.**

Accord and satisfaction is in essence a contract, and, like other agreements, must be consummated by a meeting of the minds of the parties.

3. **Accord and satisfaction** &⟶10(1)—**Claim is unliquidated if there is a dispute as to the proper amount; "unliquidated claim."**

Under the law of accord and satisfaction, a claim will be regarded as unliquidated if it is in dispute as to the proper amount.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Unliquidated Claim.]

4. **Accord and satisfaction** &⟶11(1)—**Results where money is accepted on condition that acceptance is in full satisfaction.**

An accord and satisfaction will result on acceptance of money if the offer is accompanied with such acts and declarations that the party to whom the money is offered is bound to understand that if he takes the money he takes it subject to the condition that acceptance is in full satisfaction.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accord and Satisfaction.]

5. **Accord and satisfaction** &⟶11(3)—**Claim canceled where money is accepted on condition that acceptance is in full settlement.**

Where money is accepted on the condition that acceptance is in full satisfaction, the claim is canceled and no protest, declaration, or denial can vary the result so long as the condition is insisted upon.

*On Rehearing.*

6. **Accord and satisfaction** &⟶27—**Held jury question.**

In seller's action for balance of purchase price, the question of whether there had been

an accord and satisfaction by seller's acceptance of an amount less than that first demanded, in view of buyer's telegrams to seller demanding certain deductions, *held* a question for the jury.

**7. Sales ⬤⟲88—Meaning of contract "f. o. b." common points a question of fact.**

Contract for sale of cotton linters "f. o. b." common points *held* not so unambiguous as to require court to hold as a matter of law that seller be required to pay freight charges, where shipments were made from other points at a less rate than common points; the question being one of fact to be determined under the evidence.

Appeal from District Court, McLennan County; Erwin J. Clark, Judge.

Action by Early-Foster Company against W. F. Klump & Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Tom L. McCullough, of Dallas, and J. N. Gallagher, of Waco, for appellant.

O. L. Stribling, of Waco, for appellee.

BRADY, J. Early-Foster Company, a corporation, sued W. F. Klump, doing business under the firm name of W. F. Klump & Co., to recover an alleged balance of about $1,200, claimed to be due for the price of 2,000 bales of cotton linters sold by appellant to appellee, under contracts dated December 1 and December 7, 1916. Appellee denied liability, and specially answered that he had fully paid the amount due on the contracts, alleging that such payments were made upon drafts drawn by appellant with bills of lading attached through banks in New Orleans, aggregating the sum of about $70,000; that the banks, acting for appellant in the collection of the drafts, accepted this sum in full payment of the amount due by appellee on account of the purchase and sale of the linters; that, upon the payment of this amount, the New Orleans banks delivered the bills of lading and drafts to appellee, and canceled and marked paid the drafts, and that thereafter the appellant, in due course of business, received and accepted the sum so paid in full payment and settlement of appellee's indebtedness, with full knowledge that the sum paid by appellee was in full of the contract. It was further pleaded by appellee that there was a dispute as to the correct amount due, and especially as to certain items making up the sum total of the drafts, which were claimed to be overcharges, but which were authorized by appellant to be deducted from the face of the drafts, and that the acceptance of the balance, and the other facts alleged, constituted a full and complete accord and satisfaction. At the conclusion of plaintiff's testimony, the trial court instructed a verdict for the defendant, upon which judgment was rendered for appellee.

The contracts in question were effected by interchange of telegrams, the linters being sold at a fixed price per pound, f. o. b. Texas common points. The cotton was shipped in due course, and the drafts with bills of lading attached were drawn and sent to New Orleans banks, where appellee was doing business. A controversy arose over certain items included in the amount of the drafts, with relation to certain charges which were claimed by appellee to be unauthorized by the contract, and illegal and excessive demands.

The telegrams and letters, relating to appellee's demands for deductions and appellant's allowance of the same, are as follows:

"New Orleans, La. 338 p. m. Dec. 15, 1916. Early Foster Co. Waco. Drafts here but all advance charges on ladings must be reduced also freight allowance must be made on all stock moving out of Waco over other lines than Cotton Belt also charge of one seventy-one account three hundred Corsicans must be deducted and must have sworn weights as instructed. 4:03 p. m. W. F. Klump & Co."

"Waco, Tex. 408 P. Dec. 15, 1916. W. F. Klump and Co. New Orleans, La. Bank wires you refuse pay our draft covering five hundred bales linters account advance charges forty dollars which is demurrage accrued while cars held here pending shipping instructions from you weight sheets attached are compress weights and oked by M. Tonnellet please pay our draft answer. Early Foster Co. 430 P."

"Waco, Texas, 410 P. M. Dec. 15, 1916. W. F. Klump & Co. New Orleans, La. Bank wires you returned our draft twenty-four thousand dollars account amount incorrect and routing not per your instructions all shipments routed teepee per your instructions. We sold goods fob Texas common points and made some shipments from points taking rate twelve and half cents less than common points. Please advise quick what amount should draft be for. Early Foster Co. 424 P. M."

"Waco, Tex. 421 P. Dec. 15, 1916. W. F. Klump and Co. New Orleans, La. Answering we sold linters adjusted intoxicate five hundred seventy-five bales concentrated Waco via Katy and shipments made out same way but all shipments made teepee delivery per your instructions all weights furnished were compress and public weighers weights accepted by Tonnelet can forward you duplicates sworn to if we have to make deduction it will be under protest and we will arbitrate. Early Foster Co. 442 P. M."

"New Orleans, La. 506 P. M. Dec. 15, 1916. Early Foster Co. Waco. Full shipping instructions given you within contract time arrange all papers correctly and drafts will be paid duplicate sworn certificates acceptable instructed you to route linters out of Waco Cotton Belt and Texas Pacific. W. F. Klump & Co. 522 P. M."

---

⬤⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Waco, Texas, Dec. 15, 1916. W. F. Klump and Co. New Orleans, La. Answering we will forward you duplicate sworn weights linters shipped as wired five hundred seventy-five bales were concentrated Waco but shipped teepee delivery we sold linters fob Texas common points and if we had made shipments from points taking excess freight we would have had to pay same we perfectly agreeable arbitration either according Texas Cotton Seed Crushers rules or three disinterested parties. Early Foster Co. 8:14 P. M."

"New Orleans, La., 233 P. M. Dec. 16. Early Foster Co. Waco, Texas. We bought fob common points we control routing deduct all charges per our wire yesterday. W. F. Klump & Co. 235 P."

"Waco, Texas, 3 P. M. Dec. 16, 1916. W. F. Klump and Co. New Orleans, La. Answering five hundred seventy-five bales linters shipped you originated different points for convenience we shipped them into Waco and stored them and reshipped out of here and shipments had to go out via same roads over which they arrived in order concentration apply we however instructed delivery via teepee per your instructions why not agree arbitration. Early Foster 338 P."

"Waco, Texas, Dec. 16, 1916. W. F. Klump & Co. New Orleans, La. Gentlemen: Referring to exchange of wires, there was no use in our having to send all these telegrams when you were so familiar with the trade and understood the situation clearly. We held the linters in the cars here about seven or eight days waiting for you to give us instructions, and you did not wire us the instructions until two days after the expiration of the contract time, and then changed them two or three times. We would not have sold these linters at the price we did if it had not been that we wanted to move them immediately. As to the difference in freight, you know when a contract reads fob Texas common points, it means that the common point rate to New Orleans applies, and anything in excess of that rate we would have to take care of, and we would be entitled to anything under that. As advised you, 575 bales of the linters were concentrated in Waco, and we had to route them out the same way they came in, in order to have concentration apply. We are sending you through the bank today duplicate weight of the linters, sworn to. Now lets do not have any more bother about this. We are agreeable to doing what our contract calls for, and as advised, will be glad to leave the matter to three disinterested parties, that is we select one, you select one, and they select a third. We don't want anything but what belongs to us. The writer had thought he would visit you within the next few days, but at the moment, does not believe he will be able to go East. Yours very respectfully, Early-Foster Company, per H. M. Foster."

"New Orleans, La. 1035 A. Dec. 18. Early Foster Co., Waco, Texas. Several cars here please arrange papers quickly as instructed avoid expenses. W. F. Klump & Co. 1044 A. M."

"Waco, Tex. 156 P. Dec. 18, 1916. W. F. Klump and Co. New Orleans, La. Answering any allowance we make is under protest we in-structing bank accordingly. Early Foster Co. 207 P."

"Waco, Texas, 245 P. M. Dec. 18, 1916. W. F. Klump and Co. New Orleans, La. Have wired bank there on payment all our drafts on you deduct four hundred fifty dollars two cents which we understand is amount you demand this not according to sale and we do this under protest. Early Foster Co. 255 P."

"Waco, Tex. 530 P. Dec. 18, 1916. W. F. Klump and Co. New Orleans, La. Wire us exact amount you wish deducted from our drafts we dont understand bank wires as advised any deduction is under protest. Early Foster Co. 556 P."

"New Orleans, La. Night Letter. Dec. 18, 1916. Early-Foster Co. Waco. Invoice seven thirty-four charges ladings seven dollars over charges one seventy-one thirty-nine extra freight caused by improper routing from Waco hundred eleven seventy-two next invoices advances forty dollars improper routing one sixty-six fifty-one next over charge one forty-eight forty-five improper routing one seventy-five forty-three next improper routing hundred nine eighty-six next overcharge twenty-nine eighteen. W. F. Klump & Co.. 755 A. M."

"Waco, Texas, Dec. 19, 1916. The Commercial National Bank, New Orleans, La. Referring to your telegram of today reduce Klump draft $344.11. Central Texas Exchange National Bank."

"Waco, Tex. Dec. 18, 1916. 250 P Whitney Central Natl. Bank, New Orleans, La. Upon payment all Klump drafts ours fourteenth sixteenth deduct two hundred twenty-five dollars two cents wire immediately if accepted or not. First State Bank and Trust Co."

"Waco, Tex. 916 A Dec. 19, 1916. Whitney Central Natl. Bank, New Orleans, La. Collect Klump drafts less total deduction of seven hundred seventy-nine dollars twenty-nine cents on four drafts as per your last wire payment thanks. First State Bank & Trust Co."

On December 19, 1916, and after the drafts had been paid by appellee, appellant brought its suit for the alleged balance, and attached certain linters claimed to belong to appellee at Waco, Tex.

Appellant authorized the banks at Waco, through which the drafts were drawn, to wire the New Orleans banks to make the deductions claimed by appellee, but it was testified by Mr. Foster, of the appellant company, that he did not authorize such banks to wire that the balance would be accepted in full settlement of the contract, or to release appellee from any claim for the amounts deducted from the amounts of the drafts.

## Opinion.

There are several questions presented in appellant's brief relating to the alleged errors of the trial court in peremptorily instructing a verdict, and in not submitting to the jury the various items, comprising its

demand, to which it is claimed appellant was entitled under the contract, and as to which it is asserted there were issues of fact for the determination of the jury. A decision of these questions will be pretermitted, as, in our view of the case, must turn upon the question whether the trial court correctly held that the testimony conclusively established an accord and satisfaction. This seems to have been the ground upon which the peremptory instruction was given, and, if the trial court's action in this particular was correct, it is immaterial what appellant's rights were under the contract.

Appellant's counsel earnestly and ably argue that the evidence was wholly insufficient to show that appellee's claims for deductions were bona fide, or that the money paid by appellee on the drafts was either offered by him or accepted by appellant in full settlement; but, if mistaken in this, an accord and satisfaction certainly was not established by direct evidence, but could only result from inferences to be drawn from the existence of other facts proved, a matter peculiarly within the province of the jury. This claim requires a discussion and analysis of the documentary evidence, · which must chiefly determine whether there was conclusively and indisputably established an accord and satisfaction.

It will be observed that the evidence touching this question is undisputed; and in determining its effect certain established principles of law should be kept in mind.

[1] First. Where there is any material issue of fact, it is error for the trial court to take the case from the jury and to peremptorily instruct a verdict.

[2] Second. Accord and satisfaction is, in essence, a contract, and, like all other agreements, must be consummated by a meeting of the minds of the parties. Railway v. Gordon, 70 Tex. 80, 7 S. W. 695; Bergman Produce Co. v. Brown, 172 S. W. 554; Harrison v. Henderson, 67 Kan. 194, 72 Pac. 875, 62 L. R. A. 760, 100 Am. St. Rep. 386; 1 Cyc. p. 312, par. C.

In 1 R. C. L. p. 183, § 12, after stating the above principle, it is said:

"If the creditor is held to abate his claim against the debtor, it must be shown that he understood, or should have understood, that he was doing so when he received the consideration therefor."

[3] Third. Under the law of accord and satisfaction, a claim will be regarded as unliquidated if it is in dispute as to the proper amount. 1 C. J. § 77, p. 555; Powers v. Harris, 42 Tex. Civ. App. 250, 94 S. W. 138.

[4, 5] Fourth. An accord and satisfaction will result if the offer is accompanied with such acts and declarations as amount to a condition that, if the money is accepted, it is accepted in satisfaction, and such that the party to whom it is offered is bound to understand from it that if he takes it, he takes it subject to such condition. In such circumstances, the party to whom the offer or tender is made has no alternative but to refuse or accept, upon the conditions named or necessarily implied; and, if he takes it, his claim is canceled, and no protest, declaration, or denial of such, so long as the condition is insisted upon, can vary the result. 1 Cyc. pp. 333, 334; 1 R. C. L. 197; Hunt v. Ogden, 58 Tex. Civ. App. 443, 125 S. W. 386; Powers v. Harris, 42 Tex. Civ. App. 250, 94 S. W. 137; Shelton v. Jackson, 20 Tex. Civ. App. 443, 49 S. W. 415; Clopton v. Caldwell Co., 187 S. W. 400; Cristlar v. Williams, 62 Tex. Civ. App. 169, 130 S. W. 608; Daugherty v. Herndon, 27 Tex. Civ. App. 175, 65 S. W. 891; Bergman Produce Co. v. Brown, 172 S. W. 554.

There can be no controversy, we think, that there was a bona fide dispute between appellant and appellee as to the correct amount due by appellee under the contracts. The first telegram of December 15th, from Klump & Co., to appellant, challenged the amount of the drafts, and made the unequivocal demand for certain deductions before appellee would agree to pay the drafts. Then ensued an exchange of telegrams, in which appellant insisted upon the correctness of its drafts, but appellee stood pat at all times.

Appellant suggested arbitration, and also plainly stated that any deductions allowed or to be allowed were under protest. However, after inquiring the exact amount of appellee's demands, appellant was plainly advised by appellee's telegram of December 18th exactly what deductions were demanded; and, with due authority from appellant, the Waco banks, on December 19th, authorized the New Orleans banks to deduct all the allowances demanded by appellee, and in effect to accept the remainder. Acting thereunder, appellee paid the balance on the drafts, and they were marked paid and canceled, and the bills of lading delivered to appellee.

Under these conditions, it seems plain that the conditions named by appellee were accepted by appellant, and that the payment by appellee, under circumstances whereby appellant knew, or should have known, that the money was tendered and accepted in satisfaction of its claims, unless perhaps a different result might ensue from the fact that several of appellant's telegrams stated that the deductions were made, or to be made, "under protest," constituted an accord and satisfaction. We are of the opinion that this attempted reservation, in the circumstances of this case, was of no effect. We have seen that it is established law that, when a party to a controversy accepts a tender or offer of his adversary, his claim is canceled, "and no protest, declaration, or

denial of such so long as the condition is insisted upon can vary the result."

The evidence shows that appellee made his demands emphatic and his conditions plain; also that appellant accepted the same, although unwillingly and under protest. As was said by the Supreme Court of New York, in Matthews v. William Frank Brewing Co., 26 Misc. Rep. at page 48, 55 N. Y. Supp. at page 242:

"There is no magical force in the term 'under protest.' It does not establish compulsion, and implies nothing more than that the act done is contrary to the desire of the party making the protest."

To our minds, the use of the phrase "under protest" by appellant did not imply the reservation of any legal right, or manifest a purpose to resort to the courts, or to leave open for future adjustment the deductions it allowed. It was nothing more than a statement by appellant that it unwillingly acceded to appellee's demands, and was a mere protest against what was claimed to be the unjust and illegal position taken by appellee. The correspondence manifests, at most, a reluctant yielding to appellee's conditions by appellant, and it is immaterial how unwillingly a party may yield to his adversary's demands, nor how justifiable may be his protest. It is enough if he meets them, and his secret intentions or future purposes to litigate will not defeat the legal result of an accord and satisfaction.

It is conceded by appellant's counsel that, if the telegrams of appellee had used the words "in full settlement," or their equivalent, in connection with his demands for the deductions, and the allowances had then been made unconditionally, an accord and satisfaction would have resulted. There is, however, no magic in such a phrase. If the language in which the conditions were named was couched in different terms, but was equivalent in plain meaning, the result would be the same. To our minds, the necessary effect of the language of appellee's telegrams was to name conditions, the acceptance of which would close the controversy and satisfy appellant's claims; and it is immaterial that he did not employ such phrases as "in full settlement," or "in full satisfaction."

We do not think reasonable minds can differ upon the conclusion to be reached from the evidence, and therefore it became the duty of the trial court to instruct a verdict; there being no real issue for the decision of the jury.

It perhaps should be added that our conclusion is not thought to be in any wise an impairment of the principle that there must be a meeting of the minds in order to constitute an accord and satisfaction. In testing this legal principle, as applied to the facts of this case, we must not confuse the matter of the meeting of the minds upon the merits of the controversy with the question of the parties being in accord in the acceptance of the conditions named. In other words, if the parties actually agree on the settlement, it can make no difference that one of the parties is dissatisfied, or that he thinks he has been unjustly treated, and has reached his decision under protest. It may be conceded here that appellant never did recognize the justice and validity of appellee's demands, but it cannot be controverted that it did finally yield to them and accepted appellee's money, under circumstances which imperatively apprised it that the controversy was closed. There was a full meeting of the minds upon the essential question of the acceptance of appellee's conditions, and appellant should have understood, if he did not in fact, that the deductions were demanded as the condition of appellee's compliance with the contracts on his part.

Perhaps our conclusion may be strengthened by the statement of a hypothetical case, which is thought to be in analogy. Let us suppose that A. holds a note for $500, executed by B., and draws a draft on B., attaching the note to the draft. A genuine controversy arises over part payment, B. contending that he has paid $100 on the note. Upon presentation of the draft, B. wires A., demanding that the note and draft be credited with that sum, and offering to pay the balance. Although protesting vigorously, A. wires the bank to allow the credit, which is done, and the balance is paid, and draft and note, marked canceled and paid, are delivered to B. Can it be doubted that the facts would constitute a complete release of A.'s claim, although he stated in his wire that the credit was "under protest," and although B. did not, in his telegram, use any such words as "in full settlement." We think not, as A. must have understood, from the nature of B.'s telegram, that he demanded the deduction as the condition upon which he would pay the balance.

From what has been said, it follows that the trial court did not err in directing the verdict for appellee.

No reversible error having been shown, the judgment is affirmed.

Affirmed.

KEY, C. J. (written as dissenting opinion prior to disposition on rehearing). The writer regrets the fact that he cannot agree with his Associates in the conclusion reached by them, to the effect that the uncontradicted testimony establishes an accord and satisfaction, with that degree of certainty which justified the trial court in directing a verdict in favor of the defendant, and the reasons for his dissent will now be stated:

"An 'accord' is an agreement whereby one of the parties undertakes to give or perform, and

the other to accept in satisfaction of a claim, liquidated or in dispute, and arising either from contract or from tort, something other than or different from what he is or considers himself entitled to; and 'satisfaction' is the execution of such agreement." 1 Cyc. 307.

"To constitute a valid accord and satisfaction it is also essential that what is given or agreed to be performed should be offered as a satisfaction and extinction of the original demand; that the debtor shall intend it as a satisfaction of such obligation, and it is equally essential that the creditor should have accepted it with the intention that it should operate as a satisfaction. Both the giving and acceptance in satisfaction are essential elements, and if they be lacking there can be no accord and satisfaction." 1 Cyc. 312.

Another modern and valuable authority gives this definition:

"An accord and satisfaction is a method of discharging a contract, or settling a cause of action arising either from a contract or a tort, by substituting for such contract or cause of action an agreement for the satisfaction thereof and an execution of such substituted agreement." 1 Ruling Case Law, p. 177.

And the same authority reads:

"An accord and satisfaction is the result of an agreement between the parties, and, like all other agreements, must be consummated by a meeting of the minds of the parties; if the creditor is to be held to abate his claim against the debtor, it must be shown that he understood, or should have understood, that he was doing so when he received the consideration claimed therefor." 1 Ruling Case Law, p. 183.

For further and more elaborate discussion of the general subject of accord and satisfaction, the reader is referred to the authorities cited and to the valuable notes to Harrison v. Henderson, 100 Am. St. Rep. 390, and Fuller v. Kemp, 20 L. R. A. 785.

However, as no material difference exists between the other members of this court and the writer, upon the main question of law discussed in the majority opinion, and as we differ only as to the application of that rule to this case, reference to other cases more or less analogous is deemed appropriate. Before making such reference, however, it is not improper to say that an examination of the cases cited in the majority opinion will show that most of them contain express stipulation, stating that the payment was in full, or using language of similar import, while no such stipulation or condition is embodied in any of the communications which passed between the parties in the instant case. For instance, in Hunt v. Ogden, 58 Tex. Civ. App. 443, 125 S. W. 386, cited in the majority opinion, there was an indorsement on the check, "in full for all dues and demands to date;" and in most of the other cases language of similar import was used.

As sustaining my views, the following cases are referred to:

In Amr. Forwarding & Mercantile Co. v. Lindsay Chair Co., 129 Ill. App. 548, the court said:

"The contention that the verdict and judgment are excessive is based upon a claim that appellee is not entitled to interest, and that there was an accord and satisfaction, in that appellee accepted a check sent by appellant in full of a disputed account as to which there was a difference between the parties, relating to the percentage of discount to which appellant claimed to be entitled. The difference is said to be $90.04. As to the alleged accord and satisfaction there is evidence tending to show that the amount of discount to be allowed upon a portion of the account was in dispute, and that, finally, December 19, 1902, appellant wrote, inclosing a check, with the statement that: 'In conclusion we wish to say that the check for $816.43 which we inclose is the correct balance due you and we will not deviate from it. We ask you to change your records accordingly in order that we may have a clean sheet for the future.' It is argued that this language indicates that the check referred to was sent in full of appellee's accounts, and that its acceptance by appellee was a satisfaction of that account. We cannot concur in this view. The language of the letter in effect states that the check is for the correct balance, and that appellant will not pay any more. From this appellee might conclude that if it wanted to collect the balance it would have to do so by enforcing the claim at law or otherwise. But there is nothing in the letter which can be reasonably construed as a notification to appellee that the check was sent upon condition that if accepted and used it would be in satisfaction of the claim. The check does not purport to have been sent in full of the demands and the letter does not so indicate. In Canton Coal Co. v. Parlin, 215 Ill. 244–246, cited by appellant, the check there in controversy was sent 'in full of account.' No such statement nor its equivalent accompanied the check in the case at bar, nor is there anything from which such intention can be implied. It is one thing to inform a creditor when sending a check that the debtor will not pay any more, and a very different thing to advise him that the check is sent upon condition that, if he accepts it, he will do so in full settlement of the account. See De Kalb Implt. Works v. White, 59 Ill. App. 171–173; Lang v. Lane, 83 Ill. App. 543–548."

In De Kalb Implt. Works v. White, 59 Ill. App. 171, where a person sent a draft to another for a less sum than was claimed to be owing, suggesting that the same be accepted in settlement, for, if returned, he should not trouble himself to send again, it was held that the draft might be accepted for the undisputed portion of the claim, and a suit maintained for the balance.

In Preston v. Grant, 34 Vt. 201, where the party making a tender upon a promissory note said that he tendered the sum offered as the balance due upon the note, it was held that there was nothing in this language

that could fairly convey the idea to the party to whom the tender was made that it was offered upon the condition that if he took it he did so in satisfaction of the sum so offered, and that his acceptance of the sum so offered did not constitute an accord and satisfaction as a matter of law.

In Hodges v. Truax, 19 Ind. App. 651, 49 N. E. 1079, where the payer sent the payee of a promissory note a check for part of the sum due, with the words in the body of the check, "in full of all notes and obligations to date,". and accompanied the same by a letter, stating that he made such tender for several reasons, the acceptance of the check, acknowledging the receipt thereof on account, did not operate as a discharge of the entire debt.

In Boston Rubber Co. v. Peerless Wringer Co., 58 Vt. 551, 5 Atl. 408, the court said:

"Did the transaction between the parties amount to an accord and satisfaction? What amounts to one is well stated in Preston v. Grant, 34 Vt. 201, viz.: 'To constitute an accord and satisfaction it is necessary that the money should be offered in satisfaction of the claim, and the offer accompanied with such acts and declarations as amount to a condition that if the money is accepted it is accepted in satisfaction, and such that the party to whom it is offered is bound to understand therefrom, that, if he takes it, he takes it subject to such condition.' See Towslee v. Healey, 39 Vt. 522, and cases cited in Rob. Dig. 2. Do the facts reported by the referee bring this case within the rule as above stated? On the first day of April, 1881, the defendant sent to the plaintiff a statement of the account; on the 26th of the same month a similar statement was sent, with a note for the apparent balance, and a letter in explanation of some of the items, the letter ending as follows: 'Trusting you will find this correct and satisfactory, we remain.' The plaintiff kept the note and wrote the defendants, giving its view of the items in controversy. There was nothing in the correspondence referred to which indicated in the slightest degree that the note was offered in satisfaction of the account. It simply covered an admitted balance, and was in the usual mode of payment. There was no act or declaration accompanying the giving of the note that amounted to a condition that, if it was accepted, it was to be in satisfaction of the claim; nothing to give the plaintiff to understand that, if he took it, he took it subject to such a condition. The case is lacking all the substantial elements of an accord and satisfaction."

In Pottlitzer v. Wesson, 8 Ind. App. 472, 35 N. E. 1030, a debtor sent his check in payment of an account. It was held that this did not necessarily imply that if the creditors accepted the check they must have understood that their accepting it was in full of their claim; hence there was no accord and satisfaction thereby shown.

In Perkins v. Headley, 49 Mo. App. 556, it was held:

"Where a controversy as to the amount of the indebtedness exists between a creditor and his debtor, and the debtor tenders to the creditor the amount which he claims is due on condition that the acceptance of it should discharge the entire demand, the acceptance will constitute an accord and satisfaction as a matter of law, since one who accepts a conditional tender assents to the condition."

But it was held in this case:

"That the mere fact that the plaintiff received from the defendants less than the amount of his claim in silence, and with knowledge that the defendants claimed to be indebted to him only to the extent of the payment made, did not conclusively and as matter of law establish an accord and satisfaction."

In Beckman v. Birchard, 48 Neb. 805, 67 N. W. 784, where a payment of money was made as a balance due, and the claim made that this was an accord and satisfaction, it was held:

"A creditor who accepts money tendered by the debtor unconditionally does not by that act estop himself from maintaining an action to recover any further sum that may be due."

In Kruger v. Geer, 26 Misc. Rep. 772, 56 N. Y. Supp. 1015, an attorney wrote to his client:

"Enclosed you will find a statement of account, my receipted bill for professional services since our last settlement, and a check for $166.86, being the balance due you."

No other indication being found that this was intended as full settlement, the court held:

"That the fact that plaintiff retained the check and the receipted statement where the check contained no condition that it should be received in full payment is insufficient to show an accord and satisfaction."

It was ruled in Brigham v. Dana, 29 Vt. 1:

"A sum of money paid and received will not operate as a full settlement, although the payer so intended it, and would not have paid it if he had not understood that such would be its effect, but in reference to which he made no such express condition, if the payee did not so understand it, and would not have received it upon such an understanding."

In Hillestad v. Lee, 91 Minn. 335, 97 N. W. 1055, it was held that acceptance by a creditor of a check for part of his disputed claim will not operate as an accord and satisfaction, unless the check recites, in effect, that it is in full payment of the claim, or it be so declared expressly or by implication when the check is tendered.

Ginn v. W. C. Clark Coal Co., 143 Mich. 84, 106 N. W. 867, 107 N. W. 904, sustains the same doctrine.

It is conceded in the majority opinion that an accord and satisfaction is based upon a contract, to the effect that, by the debtor paying a certain sum and the creditor ac-

eepting the same, the latter thereby agrees to and does release all of his original demand against the former. It should be borne in mind that the fact that the payment made was intended and accepted as a full satisfaction of the original claim is just as important and essential as the fact that such payment was made. It may be conceded that such agreement to release the original demand, upon payment of a given sum, may be proved by circumstantial evidence, and consist of what is often termed an "implied contract"; and therefore it has been often held that when the debtor tenders a given sum, accompanied by a distinct statement that it is offered in full satisfaction of the creditor's demand, and he accepts the sum, such acceptance is evidence of an implied contract upon his part to release his entire demand, although he may not have expressly agreed so to do. But no case has been cited, and my research has failed to find any, in which it has been held that the mere payment by the debtor of the amount which he concedes to be due when he denies owing any more, and the acceptance of the same by the creditor, without anything else done or said to indicate that it was offered in full satisfaction of the original demand, necessarily leads to the conclusion that such payment was intended as a satisfaction of the entire claim.

In Ry. v. Gordon, 70 Tex. 86, 7 S. W. 698, the Supreme Court of this state said:

"That an accord may be based on an implied contract we do not doubt, but before a right will be deemed to have been so surrendered, the implication must be one necessarily arising."

In that case the court was considering the question of the sufficiency of the testimony to show an accord and satisfaction, while in this case this court must not only consider that question, but also the further question of the right of the trial court to withdraw the case from the jury, and direct a verdict for the defendant. To justify such action on the part of the trial court, there must be more than sufficient evidence to support a finding of the essential facts necessary to constitute an accord and satisfaction, but the proof must be of such probative force as necessarily establishes such facts.

Does the mere fact that the defendant, contending that the plaintiff had drawn drafts on him for more than he owed, and demanding that the amount of the drafts be reduced, and, in effect, offering to pay the same when so reduced, necessarily imply that, if the plaintiff consented to such change in the drafts and accepted the amount the defendant was willing to pay, it would thereby agree to release the defendant as to its entire claim against him. To my mind, it seems just as reasonable to suppose that the defendant, though willing to pay the amount which he conceded to be due, was unwilling to pay the additional amount for which he did not concede himself liable, knowing that if he paid the same he would probably be without redress; and that he was willing to leave the disputed items for future adjustment. So much as to what was done and said by the defendant, which, in my judgment, does not necessarily show that the payments made by the defendant were intended by him as a satisfaction of the plaintiff's entire claim. But other facts tend strongly to show that such was not the intention of the defendant when he made the payment, nor of the plaintiff when it accepted the same.

On December 15, 1916, three days before the defendant made any payment, the plaintiff sent him a telegram, which, among other things, contained this language:

"If we have to make deduction, it will be under protest, and we will arbitrate."

On December 18th, the plaintiff sent the defendant the following telegram:

"Answering any allowance we make is under protest. We instructing bank accordingly.

And later the same day, in two other messages, that protest was repeated.

While the writer concedes that there is no magic in the word "protest," nor in the thousands of other words, nevertheless, he believes that its use four different times in messages sent by the plaintiff to the defendant was sufficient to indicate that the plaintiff intended thereby to reserve, and not surrender, its legal rights concerning the disputed items, which it agreed might be deducted from the drafts it had drawn upon the defendant. As showing that the plaintiff did not understand that, by accepting the payment made, it thereby surrendered all further claims against the defendant, we refer to the fact that immediately after, and on the same day the concessions were made and the drafts were paid, it instituted this suit to recover the balance of its original claim, which had not been paid.

In Texas Life Ins. Co. v. Minnie Ola Legg, 229 S. W. 587, decided by this court in 1918, in considering the action of the trial court, in directing a verdict, we said:

"We sustain the second assignment of error, which complains of the action of the trial court in directing a verdict for the appellees. While we do not hold that the testimony was insufficient to warrant a finding in favor of the appellees, upon either or both of the issues of fact above referred to, we do hold that it was not of such a conclusive nature as to justify the court in directing a verdict for them. The issues referred to were issues of fact, and, conceding that there was no conflict in the testimony, still, whether or not there was a waiver by appellant of its right to claim a forfeiture of the policy, and whether or not the

necessary facts existed to constitute an estoppel, were conclusions to be reached and inferences to be drawn from the existence of the facts proved, and such conclusions and inferences were not so clear and manifest as to justify the court in directing a verdict for either side."

So, in the present case, as in the case cited, there was no direct or express proof of an agreement that the amounts paid by the defendant should be accepted by the plaintiff as a satisfaction of its entire demand, and such agreement, if found to exist at all, would have to be inferred from the existence of the facts in evidence; and, as, in effect, held in the case just cited, the general rule is that when a particular fact is to be inferred from the proof of certain other facts, either party has a right to have a jury decide whether or not such inference should be made.

In reference to the hypothetical case given in the majority opinion, it is deemed proper to call attention to the difference between that and the instant case. In that case the plaintiff's cause of action would be based upon a written obligation, signed by the defendant, and when, in such case, the plaintiff accepts less than the amount claimed by him to be due, and marks the note paid and delivers it to the payee, such conduct on his part tends strongly, and perhaps necessarily, to the conclusion that he understood and accepted the payment in full satisfaction of his original demand. In the case at bar, while there was a written contract, the breach of which constituted the plaintiff's cause of action, it was not shown that the plaintiff marked the same paid or canceled and delivered it to the defendant. On the contrary, the plaintiff merely drew drafts upon the defendant, in favor of certain banks in Waco, and these were sent by such banks to other banks in New Orleans, for collection. The drafts directed the defendant to pay to designated banks specified sums of money, and charge the same to the plaintiff's account, and were stamped paid by the collecting banks. They were not written obligations signed by the defendant, and therefore their surrender to him was no evidence of the fact that the plaintiff intended to surrender its entire cause of action. Also they directed the defendant to charge the amount paid to the account of the plaintiff, thereby indicating that the drafts were not intended as a full settlement between the parties.

And the same may be said about the bills of lading which accompanied the drafts; they were not signed by the defendant, and imposed no obligation upon him, and he was entitled to them when he paid the drafts. Therefore the delivery to the defendant of the drafts and bills of lading attached constitutes no analogy to delivery and cancellation of a promissory note. This shows that, if it be conceded that an instructed verdict would be justified in the hypothetical case embraced in the majority opinion, that case would not be authority for the decision made in this case.

A valid contract for an accord and satisfaction, like any other contract, must be based upon a sufficient consideration; and, inasmuch as the defendant paid to the plaintiff only the amount which he conceded to be due, and as there was no other consideration but such payment, to my mind it is difficult to see where there was any consideration for an agreement by the plaintiff to release the balance of his claim, if such agreement was made. It is difficult to see how the payment of a debt, which the debtor concedes to be due, can be made to operate as a consideration for another and different contract. The authorities seem to be in conflict upon that subject, and, as the question is not presented in the briefs nor considered in the majority opinion, it will not be discussed by the writer.

The writer notes that the majority opinion, in effect, holds that the evidence in this case is so conclusive that no reasonable ground exists for a difference as to the conclusion to be drawn therefrom. I am disposed to assert the proposition that there is no testimony sufficient to show an agreement to accept the payments made in satisfaction of the plaintiff's entire demand; and, if my Associates did not differ with me upon that subject, I would feel strongly inclined to hold that the testimony falls so far short of proving such contract that that issue should not be submitted to a jury. But, as the members of this court differ so widely as to the effect of the testimony, I am willing to hold that the issue referred to should have been submitted to the jury.

There are some other questions in the case, which have not been considered in consultation, and upon which the writer expresses no opinion.

### On Rehearing.

BRADY, J. [6] Upon the original hearing of this cause, the judgment was affirmed, Chief Justice KEY dissenting. The ground of affirmance was that an accord and satisfaction was conclusively established by the evidence, and that there was no material issue of fact to be submitted to the jury, thus justifying the peremptory instruction for the defendant, given by the trial court.

A more mature consideration of the matter convinces the majority they were in error in this holding. It is now believed that the evidence did not show an accord and satisfaction with that degree of certainty which justified the lower court in taking the case from the jury, and that under the evidence an accord and satisfaction could only result from inferences to be drawn from the existence of other facts proven, which was a matter peculiarly within the province of the jury.

The following authorities, cited in appellant's brief, lay down the proposition that an accord and satisfaction is the result of an agreement between the parties and, like all other agreements, must be consummated by a meeting of the minds of the parties. Railway Co. v. Gordon, 70 Tex. 80, 7 S. W. 695; Bergman Produce Co. v. Brown, 172 S. W. 554; Renihan v. Wright, 125 Ind. 536, 25 N. E. 822, 9 L. R. A. 514, 21 Am. St. Rep. 249; Harrison v. Henderson, 67 Kan. 194, 72 Pac. 875, 62 L. R. A. 760, 100 Am. St. Rep. 386; A. Matheney v. City of Eldorado, 82 Kan. 720, 109 Pac. 166, 28 L. R. A. (N. S.) 980, 984; 1 R. C. L. p. 183, § 12; 1 Cyc. p. 312, par. C. They also hold further that to constitute a valid accord and satisfaction it is essential that what is given should be offered in satisfaction and extinguishment of the original demand, and that it shall be accepted as a full satisfaction. Under the evidence, neither of these elements is conclusively established. The telegrams from appellee, containing the conditions upon which the deductions were demanded, did not expressly apprise appellant that the deductions were required, upon condition that the payment of the balance should constitute a full satisfaction of appellant's entire demands. Neither do we think that the language of these telegrams was so imperative in character as that appellant was bound to understand from it that the offer to pay the remainder was upon condition that its acceptance would be considered a satisfaction and extinguishment of the entire claim. We think this was a question for the jury, especially in view of the testimony of Mr. Foster to the effect that he had no intention of making such an agreement; and the evidence further showing that appellant had made repeated protests against the allowance of the deductions, which protests continued up to the acceptance of the balance paid on the drafts, and was promptly followed by a suit for the claims in controversy.

As additional authorities, also cited in appellant's brief, may be added the following: Hedrick v. McLaughlin, 214 S. W. 985; Bay Lbr. Co. v. Snelling, 205 S. W. 763; Myers v. Grantham, 187 S. W. 532; Graham v. Kesseler, 192 S. W. 299.

As to the authorities cited in the majority opinion, while it is still believed that they announce correct rules of law, upon this question, we have concluded that there was a mistaken application of the principles. they announce to the facts of this case.

[7] The conclusion last reached requires a reversal, and the remanding of the cause to the trial court for further trial; unless we should sustain appellee's contention that the contract is unambiguous, and should be construed by the court to exclude, as a matter of law, all appellant's claims in suit. We are unable to agree with this contention. We do not think the term "f. o. b." gives to the contract such a precise legal meaning, in relation to the controversy here, as authorizes us to construe the contract, as a matter of law, to exclude all or any of the items of appellant's claim. In view of the evidence, especially the testimony of Mr. Foster, we think these are matters to be finally determined by the proof offered in support and denial of the several items. The case having been taken from the jury without giving appellee an opportunity to present full testimony in support of his theories, the cause should be remanded for trial upon these issues.

For the reasons indicated, the motion for rehearing is granted, the judgment is reversed, and the cause remanded.

Motion granted.

Reversed and remanded.