## NOYES v. KENDRICK. (No. 1973.)

Court of Civil Appeals of Texas. El Paso. March 17, 1927.

1. **Brokers** ⊜⇒19, 69—Broker must sell principal's land for best obtainable price; surplus over list price belonging to principal unless otherwise stipulated.

Broker must sell his principal's land at best price obtainable, and in absence of any contrary stipulation, surplus over list price upon sale goes to seller and not to broker.

2. **Brokers** ⊜⇒71—Broker held entitled to surplus over list price of land sold, under principal's express agreement.

Where principal, after listing land for sale, wrote to broker that he might receive the benefit of selling land for more than list price, broker was entitled to surplus over list price.

3. **Accord and satisfaction** ⊜⇒27—Compromise and settlement ⊜⇒24—Whether minds of principal and broker met in accord of dispute over commissions upon broker cashing check held for court.

Where principal, admittedly owing $9.20 on incidental costs, wrote on check therefor "balance of commission in full" and broker cashing check acknowledged receipt as "adjustment of incidental costs," whether minds of parties met

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

in accord on question of disputed commissions *held* matter of fact for trial court.

Appeal from Gaines County Court; T. O. Stark, Judge.

Action by J. J. Kendrick against E. L. Noyes. Judgment for plaintiff, and defendant appeals. Affirmed.

Philip Yonge, and Garland & Yonge, all of Lamesa, A. L. Duff, of Seminole, and E. L. Noyes, of Kansas City, Mo., for appellant.

N. R. Morgan, of Seminole, for appellee.

WALTHALL, J. Appellee, a real estate dealer, brought this suit against appellant to recover the sum of $495.75, alleged to be due him as part of his commission on a sale of 661 acres of land in Gaines county.

Appellee alleges that appellant listed said land for sale with him at the net price of $6 per acre to appellant on stated terms; that appellee was to have as his compensation all over said $6 per acre net to appellant; that thereafter he negotiated the sale of said land and fully reported same to appellant, who accepted the sale contract by letter of date June 12th, instructed appellee to go ahead with the sale, which was done, and the sale closed and deed and notes delivered; that appellant paid appellee his commissions except the balance of $495.75, for which he sues.

Appellant answered by general denial, and pleaded accord and satisfaction.

The case was tried before the court without a jury resulting in a judgment in favor of appellee for the amount sued for. The parties having failed to agree upon a statement of facts, the trial judge made and filed a statement which he certified to be true and correct. The court made no findings of fact. The statement is lengthy, and consists largely of lengthy correspondence between the parties; appellant then living at Kansas City, Mo., and appellee living at Seagraves, Gaines county, Tex.

The instrument, called a listing contract, is dated February 2, 1924, and signed by appellant. It appoints appellee and Joe M. Warren, of Clarendon, Tex., appellant's agents to sell his lands. As to commissions, it states:

"All sales to be made subject to the state lien, the buyer or buyers to assume the state lien, and the price herein given is subject to the state lien and in addition to the state lien."

The terms are stated to be one-eleventh cash and the balance on time at 6 per cent. interest. It states: "I will pay you a commission of 5 per cent. out of the cash payment," and furnish an abstract.

The land involved here and listed, and the price, are stated to be: "Section 22, block C–35, $6 per acre, state lien $1.75 per acre." The listing contract terminated August 1, 1924.

On February 5, 1924, appellee wrote appellant, after making some statements as to the small commission, but apparently not otherwise material to the issues here, reading:

"I shall continue my best efforts now I have a known listing value of each contract, and hope to be able to report some new sales soon."

February 7, 1924, appellant wrote appellee as follows:

"If you can sell the land at a higher price than I have listed it with you, then you may receive the benefit of such increase price. But in making the deeds I do not want to state the consideration any more than I receive for the land, for the reason that the price named in my deeds will have influence in making settlement with the government as to the federal estate tax."

The sale contract of date June 7, 1924, of the land involved, without setting it out in full, contains the following provisions: The seller, appellant, represented by appellee, has sold to J. O. Darroch the two parcels of land involved here; that is, section 22, block C–35, containing 640 acres, and 21 acres part of section 29, block C–35. The consideration stated is $9 per acre. The purchaser assumes the amount due the state of $1.75 per acre. The purchaser to pay $2.50 per acre cash and execute ten notes of equal amounts for remainder of consideration after deducting amount to be paid the state, due and payable as stated, and bearing 7 per cent. interest; seller to furnish abstract. Purchaser accepts contract and pays $250, part payment held in escrow pending closing of sale; seller to have land surveyed and corners established and field notes incorporated in abstract.

On June 9, 1924, appellee mailed a copy of the sale contract to appellant with inclosed letter, which, omitting addresses, reads as follows:

"Dear Sir: I am glad to report to you a sale of [describing the two tracts of land]. Having others interested with me in this deal, I desire to avail myself of the option to sell these lands at a net price to you of $6 per acre in cash net, I to receive fifty cents per acre in cash and a credit to be arranged of approximately $495.75. This will entitle me to pay for abstract and pay for having the land surveyed as recited in contract, together with paying taxes accruing for the current year. You suggested that in selling the land on the net basis to you that the excess not be showed in the deed on account of the additional costs in your income reports; but in this instance it was not convenient to have it not shown, so I have secured you 7 per cent. instead of the 6 per cent. to reimburse you in this instance. * * * [Then reference to solvency of buyer not important.] I am willing to leave this credit with you as an open account for a while, and it may be that I will let you apply later on the purchase of a half section of your land out west of Seminole and in this case I infer that it would suit you quite well to make such adjustment and get your land turned into note-bearing interest."

June 12, 1924, appellant wrote appellee as follows:

"Yours of the 9th with contract of J. C. Darroch for sale of section 22, block C–35, and the south 21 acres of the east 221 acres of section 29, block C–35, duly (received) and considered. Total land to be sold 661 acres at $9, amounts to $5,948; state lien on said 661 acres, $1,-127.17; cash payment of $2.50 per acre amounts to $1,652.50; amount to be deducted from purchase price by reason of state lien and cash payment $2,779.63, which amount, deducted from purchase price of $5,949, leaves $3,179.33 to be secured by ten notes and deed of trust; each note will be for $317.93, with interest at 7 per cent. per annum. I think the above figures are correct. Now if you should take east half of section 477, block G, at $6.50 per acre, the purchase price would be $2,080. If you were able to pay the expense of the sale and pay me the $2.50 per acre which Darroch is paying on the 661 acres then you would be entitled to a credit of $1,983, leaving only a balance due from you on the half section of $97. This is the way I understand your letter and contract. Perhaps you had better take a whole section instead of a half section, for the price I have put on my land is considerable lower than the price asked by other landowners. So I wrote before I think best to have the abstract work done by Mr. Duff. Go ahead with the sale, and write me and let me know if you understand the matter as I have stated in my letter."

June 16, 1924, appellee wrote appellant as follows:

"Concerning the commission adjustment in the last sale, a casual looking over of your figures seems to be allowing me an excess above what I would be entitled to under our prior understanding, but I will investigate and go into detail when I submit the instruments in that sale. I have desired to look up those outlying lands of yours, and I shall do that soon. If I conclude that I can handle any of it I will do so."

The sale to Darroch, after some delay, was closed. The $250 paid as earnest money was paid to appellee to apply on his commission and expenses of abstract, survey, etc.

Appellant testified on the trial, explaining what was meant in his letter of February 7, 1924, "If you can sell the land at a higher price than I have listed it with you, then you may receive the benefit of such increase price," to the effect that he was paying a commission of 5 per cent., that the larger the price the land sold for, the more appellee's commission would be.

Appellant read in evidence a letter he received from appellee of June 4, 1923, in which appellee solicited the agency to sell appellant's lands in Gaines county, and as to the commission. He wrote: "I would expect to be protected for a 5 per cent. commission on the bonus valuation of the land." Also a letter of June 2, 1924, from appellant to appellee which reads in part:

"Under our agreement, I am to pay you 5 per cent. commission on the amount coming to me, after the amount due the state is deducted. That was your offer as to commission. And the contract I sent you some time ago provides that your compensation shall be 5 per cent. on amount coming to me."

Appellant read in evidence a copy of a letter he wrote appellee June 13, 1924. Said he wrote the letter himself, sealed it, and placed a 2-cent postage stamp on it, and mailed it, properly addressed and in a return envelope; letter was not returned to him.

Appellee denied that he ever received the letter. The letter read:

"Since writing to you yesterday, I have reread yours of the 9th, and the contract of agency I gave you last February; it being your only authority to act as my agent to sell my lands in your county. I note in your said letter you state, 'I desire to avail myself of the option to sell these lands at a net price to you of $6 per acre bonus, you to receive the $2 per acre in cash net, and I am to receive 50 cents per acre in cash and a credit to be arranged of approximately $495.75.' You have no contract of that kind. I did give Mr. Warren a contract somewhat like that, but the contract expired May 1, 1924, and no sales were made under it, and Mr. Warren released me from said contract a long time before it expired. As I pay you a commission of 5 per cent. on the amount coming to me, it is your interest to sell for the best price you can. The larger the price, the more your commission will be. And it is your duty as my agent to get the best price you can. * * * The contract I sent you last February and that is the contract under which you are working. You are entitled to a commission of 5 per cent. on the sale to Darroch, less the state lien, which will be as follows: $5,949, less state debt of $1,127.17, leaves $4,821.83, on which I should pay you a commission of 5 per cent. or $241.09. And, if we are able to close the said sale with Mr. Darroch, I will gladly pay you said amount."

Appllant read in evidence a letter to appellee of June 21, 1924. The part relating to the transaction in question is, in part, as follows:

"As to your commission, I expect to pay you 5 per cent. commission on the amount coming to me out of any sale you may make of my lands. That is according to the written contract I sent you February 2, 1924. * * * I think I covered this matter in my letter of the 13th to you."

Appellant read in evidence a letter from himself to appellee of September 2. 1924, as follows:

"Has Mr. Darroch on deposit in your bank in Seagraves $250 to apply on the purchase price of the 661 acres of land I am selling to Mr. Darroch?"

On the bottom of the letter appellee wrote:

"Concerning above, will advise that Darroch has $250 in escrow with the bank. Excuse haste. September 4th."

On September 16, 1924, appellant wrote to appellee that the sale of the 661 acres of

land to Darroch at $9 per acre had been closed, and the appellee's commission of 5 per cent. to which he was entitled amounted to $240.20. Appellant further said:

"I inclose an order on the First State Bank of Seagraves to pay you the $250 deposited by Darroch as a part of the purchase price. I do not know what expenses you have been to in having the land surveyed and the abstracts made by Mr. Morgan. Pay the same and send me a statement, and apply the $250 on the same, and, if there is a balance due you, I will remit."

He inclosed an order on the Seagraves Bank to pay appellee the $250 deposited by Darroch, and requested appellee to pay the expenses incurred and send a statement of amount and he would remit.

On September 19, 1924, appellee wrote appellant in reply: Acknowledged receipt of the order for $250 and request to furnish "statement of costs and credits"; said he was writing under separate cover relating to deed inclosed; and "I will discuss with you in this our settlement on the sale to Darroch"; referred to his letter of June 9th, and appellant's reply and appellee's letter of June 16th and said:

"At that time I reckoned the net proceeds to you to be $6 per acre bonus, with $2 per acre cash, balance in notes, and I to receive 50 cents per acre cash, together with the excess at which I sold the land above the $6 per acre net to you, me to pay for abstract, surveying, state interest, and the taxes for the current year, etc.; this leaving an additional credit to me of approximately $495.75. I assume that, in figuring my commission as you did, you were not thinking of the full adjustment, and that you are expecting to adjust the state interest and taxes for this year with Darroch, together with having some credit with me to apply on abstracts, surveying, etc., and I am willing to accept this adjustment as to the cash commission proceeds. There was a credit in the Penuel remittance of $21 and $9.80 in the Darroch escrow account. In an adjustment of the remainder due me, I have concluded to propose to you the purchase of [other lands, stating terms] you to receipt me a cash payment of $500. * * * If this is agreeable to you, you may so notify me, and I will draw up all papers and send to you for approval and execution."

A letter from appellee to appellant of September 20th, referring to other matters and reciting, "I submit the expenses in Penuel and Darroch sales," then states them, "total $40, credits $30.80." A letter from appellant to appellee of September 26, 1924, acknowledging receipt of the last two letters above and inclosures, then proceeds:

"You have sent me a bill for $40 but have given me a credit for $30.80, which would show that I still owe you $9.20, and I am ready to send you the $9.20 at any time in settlement of said matter."

Then a lengthy reiteration of the matter of the Darroch sale restating appellant's view as expressed in former letters. A letter from appellee to appellant of October 2, 1924, reciting:

"Your recent letter concerning the adjustment of commission on the Darroch deal has been received and noted by me with much concern, but I am leaving the matter for future reply and adjustment."

A letter from appellant to appellee, of date October 6, 1924: "Inclosed please find my check for $9.20 balance of your commission on the sale of the 661 acres to Mr. Darroch." On the inclosed check for $9.20 are these words, "Balance of Darroch commission in full." The check was received by appellee, and collected by him and the money retained. In reply to the letter inclosing the check, appellee wrote appellant:

"I am in receipt of your favor inclosing a check to me for $9.20 in adjustment of incidental costs in prior sales, and for which accept my thanks"—then refers to other matters.

Appellant paid the taxes in 1925, paid the taxes on the land sold to Darroch, and, after appellee had received and collected the $9.20, he made three more sales for appellant in each of which he deducted 5 per cent. as his commission and remitted the balance to appellant.

## Opinion.

[1] We concur in appellant's proposition of law that it is the duty of the broker to sell his principal's land at the best price obtainable and that, in the absence of any stipulation to the contrary, in the event the broker sells for a greater price than the list price, the surplus will go to the seller and not the broker. Turnley et al. v. Michael (Tex. App.) 15 S. W. 912; Meachem on Agency, §§ 5, 469, 470; Story on Agency, § 207.

[2] But here, after the listing had been made, and after appellee had written an acceptance and made some comment on the commission allowed in the listing statement as being low, appellant then wrote:

"If you can sell the land at a higher price than I have listed it with you, then you may receive the benefit of such increase price."

Appellant's insistence that the above added nothing to the former listing commission is not tenable. The listing price was $6 per acre, and the commission stated was 5 per cent. on a sale. The land was sold for $9 per acre, less the amount due the state of $1.75 per acre. We think that appellant was entitled, under the qualified listing contract of February 7th, to receive the excess over and above the $6 per acre to the seller. After the sale had been reported to appellant for approval and the claim for the excess made, appellant directed that the sale be consummated, which was done.

[3] Appellant insists that, the amount due appellee being in dispute, his acceptance of the $9.20 check on the face of which appeared

these words, "Balance of Darroch Commission in full," constitutes an acceptance of the offer of settlement, and is an accord and satisfaction; that appellee had no right to accept the tender and prescribe the terms of his acceptance.

The question presented is not easy of solution. Going back to the origin of the item of $9.20, it seems to have been a balance left in the Seagraves Bank of the $250 cash paid by Darroch as earnest money on the purchase of the property. In appellee's letter of September 20th, in submitting what he calls· "the expenses in the Penuel and Darroch sale," he states a charge of $40 and a credit to appellant of $30.80. Appellant, replying September 26th, refers to the above items, saying:

"You have sent me a bill for $40 but have given me a credit for $30.80, which would show that I still owe you $9.20, and I am ready to send the $9.20 at any time in settlement of the matter"—then reiterates the transaction of the Darroch sale from his viewpoint.

Appellee replies on October 2d, saying:

"I am leaving the matter (of adjustment of commission on the Darroch deal) for future reply and adjustment."

On October 6th appellant writes:

"Inclosed please find my check for $9.20 balance of your commission on the sale of the 661 acres to Mr. Darroch," and inclosed the check.

Appellee, on October 9th, replied:

"I am in receipt of your favor inclosing a check to me for $9.20 in adjustment of incidental costs in prior sales."

From the above it seems that appellee, without yielding his contention for the amount claimed, presented balance of $9.20 as the balance due on expenses, and appellant remitted the amount of the balance, stating same to be in adjustment of balance due on the commission under his theory of it.

Does the receipt and disposition made of the check show accord and satisfaction? We have concluded the facts do not necessarily show accord and satisfaction. The minds of the parties must meet here, as they must meet either expressly or by necessary implication, in any other contract.

Appellee presented to appellant for payment the item of $9.20 as a balance due on expenses and not in any wise in settlement of the whole or any part of the amount of his unliquidated claim for commission in dispute. As said by Judge Stayton in Gulf, C. & S. F. Ry. Co. v. Gordon, 70 Tex. 80, 7 S. W. 697, to constitute accord and satisfaction, it must appear that the appellee agreed to receive the $9.20 in place or stead of the unliquidated sum which he conceived himself entitled to receive from appellant on account of his claim for commission. As said by Judge Nickels in Simms Oil Co. v. American Refining Co. (Tex. Com. App.) 288 ·S. W. 163, if the minds of the parties met, that is deducible only, and rests in implications. · The facts shown by the record do not irresistibly point one way or the other, and it was for the jury, or, as here, the trial court, to say whether there was an agreement whereunder the appellee creditor received the smaller amount in satisfaction of the larger amount.

In Railway v. Gordon, supra, it is said there can be no agreement expressed or implied, unless both parties intended to make it so. To constitute the new agreement of accord and satisfaction, it is essential that the appellee shall have accepted the $9.20 with the intention that it should operate as of a satisfaction of his demand for the commission. The intention of the parties is controlling, and must be determined from the circumstances attending the transaction.

Here the judgment was for appellee, and there are no findings of fact. And, as also said by Judge Nickels in the last above-cited case, if there existed the essential agreement, that fact is immaterial, unless there was present also a consideration for its support, citing Lanes v. Squyres, 45 Tex. 382, and other cases.

Without a consideration, the agreement, if any was made, is nudum pactum.

Now, if appellant's controversy and dispute as to his liability for the commission claimed by appellee was made in good faith, and in good faith urged as a defense to appellee's demand, a compromise of the demand based upon such contention would afford a sufficient consideration for the new agreement of accord. But we believe the facts presented by the record raised the issue of good faith in raising and maintaining the controversy and dispute. Simms Oil Co. v. Amer. Ref. Co., supra. The issue of good faith was evidently determined against appellant by the judgment.

As we view the record, appellant made no claim, controversy, or dispute that he did not owe the $9.20, stated to him by appellee to be for expenses in the Penuel and Darroch sales, and not a part of the commission for making sale of the land to Darroch, and that appellant's check in payment of the item of expense, and the writing on the check as stated does not, of itself, show. accord and satisfaction as a matter of law.

The case is affirmed.