## RYAN v. LONG.

### No. 11648.

Court of Civil Appeals of Texas. Galveston.

Oct. 19, 1944.

Floyd E. Ryan and S. F. Hill, both of Houston, for appellant.

No attorney on appeal for appellee.

GRAVES, Justice.

This appeal is from a judgment of the county court at law of Harris County, sitting without a jury, denying the appellant any recovery in his suit against the appellee for $175 damages for the breach of a written contract between them, wherein the appellant had undertaken to sell the appellee's homestead for him at a price of "$600.00 net to the owner, overage."

In this court only the appellant has appeared or briefed the cause on the appeal, the appellee's attorney in the court below having advised this court's clerk that, in so far as he was advised, there would be no brief filed in behalf of the appellee herein. At any rate, none has been filed.

It appears from the record, a statement of facts having been brought up therewith as a part thereof, that the facts heard below were entirely undisputed, and, in so far as material, were as follows:

This suit was originally filed in the justice court by appellant against appellee for damages in the sum of $175, "for damages for breach of a contract listing property for sale." It was duly appealed to the county court at law, where judgment was rendered in favor of the appellee.

The cause of action was based upon a written contract made by appellee, listing certain property for sale with appellant at a price of "$600.00 net to the owner for his equity." The appellant obtained a purchaser ready, able, and willing to buy the equity at $775 and to assume the payment of the incumbrance of $3500, whereupon the appellee refused to convey the property. He pleaded in defense that it was the homestead of his family, and that his wife had not signed the agreement to sell it.

It is conceded that the property was such homestead, and that the wife did not join in the contract declared upon.

Mr. E. D. Johnson, a witness for appellant, testified: "Mr. Long asked me if I could sell his place, he said he would like to list it with me as he wanted to sell it right away." Mr. Long then signed an agreement authorizing appellant "to sell the property at a price of $600, net to me, no commission, Overage." "The agreement with Mr. Long was that he was to get $600 for his equity, and anything over that was to be my commission, or the company's commission." "I explained to Mr. Long that the commission would be $175, and he agreed to take $600, and I told him the commission would be $175." "The sale price was around a total of $4000."

"I sold his equity to Mr. A. P. Randall for $775, cash, and he was to take up the notes and payments against the property." "The F. H. A. approved Mr. Randall. Mr. Long said he could not come to town. Mr. Webb asked me to meet him out at Mr. Long's house, and he had all of the papers ready for Mr. and Mrs. Long to sign. Mr. Randall met me at Mr. Long's house to have the papers signed."

Mr. C. H. Long, the appellee, was a witness upon the trial of the case, and he did not deny any of the foregoing statements. Substantially all that he testified was: "I am married and have lived on that property for three years. I didn't sign the papers, (deeds, etc.), because I didn't find

another place. I wanted to find another place."

In such circumstances, this court holds that the court below erred in so rendering a judgment adverse to the appellant, but should have rendered one in his favor, upon considerations that, in brief substance, may be stated as follows:

(1) When the appellee, C. H. Long, made an agreement in writing, listing the property with the appellant, and authorizing him to sell it for $600 net to him, the agreement was binding on him, even if the property was homestead and his wife had not joined in the contract for its sale.

(2) When the appellee listed the property with appellant for sale at a price of $600 net to him for his equity, and the latter furnished a purchaser who was ready, able, and willing to purchase for $775, and the appellee thereupon flatly refused to convey the property, the former was liable to the latter in damages in the sum of $175 for the loss suffered by him, even though the agreement was that no commission was to be paid out of the price of $600 net to the owner.

The conclusions stated, in so far as this court is advised, are sustained by all of our authorities, when the rules of law are applied to facts not in legal effect different from those stated as existing here. The contrary result so determined by the court below appears to have proceeded, perhaps, from a confusion therewith of others of our decisions holding that a contract to sell the homestead of a married man cannot be enforced by a specific performance thereof.

But this was in no sense a suit for specific performance, being rather a straight one for damages against the husband for his direct breach of the contract made between the parties, whereby he agreed to pay the appellant all over $600 net to the appellee for the sale of the property.

As indicated supra, the appellant in strictness complied with his undertaking in that respect, having found an acceptable purchaser ready, willing, and able to pay that specific net price for the property, and also $175 in excess of it, which the appellant was entitled to; indeed, as the recited testimony shows, the appellee simply refused to execute the deed conveying it to the purchaser so undisputedly obtained by the appellant. These authorities support the conclusions stated: Fonda .v. Colquitt, Tex. Civ.App., 165 S.W. 1195; Gibson & John-

son v. Ward, Tex.Civ.App., 35 S.W.2d 824; Clark v. Ray, Tex.Civ.App., 25 S.W.2d 656; Cotten v. Willingham, Tex.Civ.App., 232 S.W. 572; 7 Tex.Jur., 407, 514–516, inclusive; Taylor v. Cox, Tex.Sup., 16 S.W. 1063; Noyes v. Kendrick, Tex.Civ.App., 293 S.W. 296; McDonald v. Cabiness, 100 Tex. 615, 616, 102 S.W. 721.

It follows that the judgment of the court below should be reversed, and that judgment should here be rendered in appellant's favor against appellee for the sum of $175 with 6% interest per annum thereon from the 8th day of March, 1944, the date of the trial below. It will be so ordered.

Reversed and rendered.